R. L. QUALLS, Director,
Department of Finance and
Administration *v.* GEORGIA-PACIFIC
CORPORATION

80-7

602 S.W. 2d 646

Supreme Court of Arkansas
Opinion delivered June 30, 1980
Rehearing denied August 25, 1980

*James R. Eads, Jr., Robert G. Brockmann, Barry E. Coplin, H. Thomas Clark, Jr., Timothy J. Leathers* and *Martha Stephenson*, by: *Joseph V. Svoboda*, for appellant.

*Griffin Smith* and *W. R. Nixon, Jr.*, by: *W. R. Nixon, Jr.*, for appellee and cross-complainant.

RICHARD L. MAYS, Justice. Although Georgia-Pacific Corporation replaced a boiler and purchased spare machine parts in 1976 and 1977 at its paper mill plant in Crosset, Arkansas, Georgia-Pacific did not pay a use tax on the boiler replacement or spare machine part purchases. When the State attempted to collect the tax and a 10% penalty for non-payment, Georgia-Pacific sought an injunction in Chancery, claiming an exemption. The chancellor enjoined the collection of the 10% penalty and use tax on the boiler replacement but sustained the tax on the purchases of the spare machine parts. On appeal, affirming in part and reversing in part, we hold that Georgia-Pacific was not entitled to a use tax exemption on either claim and, because Georgia-Pacific negligently failed to pay the tax, must now also pay the 10% penalty.

Georgia-Pacific's tax exemption claims are based on Ark. Stat. Ann. § 84-3106(D)(2)(a) and (b), which respectively exclude from taxation "machinery purchased to replace existing machinery in its entirety," and "machinery . . . purchased and used . . . to expand existing manufacturing . . . ." Georgia-Pacific contends, and the chancellor agreed, that although it used original parts (the steam drum, mud drum and superheater) from the oil boider in reconstructing a new one, the used parts were so reconditioned and the replacement effort so complete that the oil boilder was "in essence" replaced in its entirety. To factually support its contention, Georgia-Pacific established that the costs of the replacement boiler approximated that of a "brand new" boiler, that the replacement boiler satisfied industry and insurance standards for a new boiler and that the salvaged parts from the old unit were reconstructed and baked in ovens to put them in new condition. Irrespective of Georgia-Pacific's argument, however, an exemption provision must be strictly construed against the taxpayer and doubt about its applicability obliges a denial of the exemption. *S.H. & J. Drilling Corp.* v. *Qualls, Director*, 268 Ark. 71, 593 S.W. 2d 178 (1980). Conditioning an exemption on language requiring a replacement in entirety would ordinarily exclude exemption consideration for a replacement which included original parts, even if refurbished, especially when language formerly authorizing an exemption for repaired parts has been excised from the statutory exemption provision. As we stated in *Fourco Glass Co.* v. *Heath*, 261 Ark. 192, 547 S.W. 2d 121 (1977), rejecting an argument similar to that which Georgia-Pacific now asserts:

> Such an argument might have been persuasive under the language of Act 113 of 1967, which exempted 'tangible personal property used for repair, replacement, or expansion of existing manufacturing or processing facilities.' But in the following year, by Act 5 of the First Extraordinary Session of 1968, the legislature amended that language to read as we have quoted it. Simple repairs or replacements are no longer exempt; the machinery must be replaced in its entirety.

Any other approach would make a mockery of the principle

of strict construction and open the flood gates for tax exemption claims every time an old machine is "refurbished."

Georgia-Pacific also contends that spare machine parts purchased upon the manufacturer's recommendation in connection with the purchase of more complicated production machinery should be exempt as machinery purchased to expand existing manufacturing facilities. Georgia-Pacific likens these spare machine parts to spare tires which come with the purchase of automobiles and argues that since their original counterparts can be easily damaged and disrupt machine operation until replaced, the spare machine parts represent an integral part of the original package and are necessary for optimum machine performance. Although Georgia-Pacific supports its argument with sundry facts, we find no statutory language to justify an exemption for spare parts. No matter how closely connected with the machine and susceptible to damage the spare parts are, they were not original parts and were needed as replacements only when the originals were damaged. Again, applying our rule of strict construction against the taxpayer, we must reject any exemption claim for spare parts.

Finally, Georgia-Pacific contends that the chancellor appropriately abrogated the 10% penalty assessed by the state on the tax deficiency. We differ with the chancellor and reinstate the penalty. The state informed Georgia-Pacific in 1975 that its exemption claims were unacceptable. Nevertheless, Georgia-Pacific disregarded the caveat and refused to pay the taxes in 1976 and 1977. Under such circumstances, not only is the penalty justified because of Georgia-Pacific's negligence, a finding which was originally made by the Revenue Department Hearing Board, but the penalty assessment may very well be essential to maintain the integrity of our taxing system.

Affirmed in part and reversed in part.

HICKMAN and STROUD, JJ., dissent in part.

JOHN F. STROUD, Justice, dissenting in part. I disagree with the view of the majority concerning the imposition of a

10% penalty on a tax deficiency. There is a substantial difference between negligence and a disagreement between a taxpayer and the taxing authority as to the application of an exemption statute. The fact that an honest question was involved here should be quite apparent from the divergent views of the trial court and this court as to the proper application of the exemption statute. I find no evidence of negligence in this case and agree that the Chancellor was correct in reversing the finding of the Revenue Department Hearing Board. In the absence of negligence, the penalty can still be assessed based on *Great Lakes Chem. Corp.* v. *Wooten*, 266 Ark. 511 (Sept. 24, 1979), where this court held that Ark. Stat. Ann. § 84-3113 (Repl. 1960) requires the imposition of either a 10% penalty for negligent non-payment of the tax without intent to evade the tax or a 50% penalty for fraudulent non-payment with intent to evade the tax. I respectfully disagree with that decision which in essence holds that as a matter of law a tax deficiency under this statute must result from either negligence or fraud. Prior to authorizing the assessment of the 10% or 50% penalty, the statute provides a third alternative, which is the payment of interest at 1/2 of 1% per month "from the time the tax was due and payable until paid." It is not an automatic assessment, but becomes due "upon notice and demand by the Commissioner." I think *Great Lakes Chem. Corp.*, supra, completely overlooks this third alternative — the payment of interest when no negligence or fraud is involved.

The statute clearly requires a finding of negligence to impose the 10% penalty. After providing for the possible assessment of interest on a tax deficiency, § 84-3113 continues:

> If *any part of such deficiency* is found by the Commissioner to be due to negligence of the taxpayer without intent to evade the tax, there shall be added ten (10%) per cent of the total amount of the deficiency in the tax, together with interest as hereinabove provided. (Emphasis added.)

The only reasonable construction that can be given to the language "any part of such deficiency" is that the 10%

penalty need not apply to *all* of the deficiency. I think a reasonable construction of the statute as a whole indicates that the part of the deficiency not resulting from the negligence of the taxpayer need not necessarily result from wilful fraud. I submit it can as readily result from the absence of negligence *and* fraud.

I would affirm that part of the decision of the trial court that abrogated the 10% penalty assessed against appellee.

HICKMAN, J., joins in this dissent.