WESTERN PAPER CO. *v.* Robert L. QUALLS,
Director, Arkansas Department of Finance
& Administration

81-5                                      615 S.W. 2d 369

Supreme Court of Arkansas
Opinion delivered May 18, 1981

*Rose Law Firm*, by: *W. Dane Clay*, for appellant.

*James R. Eads, Jr., Joseph V. Svoboda, H. Thomas Clark, Jr., Timothy J. Leathers, Jr., Cassandra Wilkins-Slater, Robert J. DeGostin, Jr., Kelly S. Jennings*, and *Wayne Zakrzewski*, for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, Western Paper Co., appeals from a decree of the Pulaski County Chancery Court denying its claimed exemption from gross receipts (sales) tax on its sales to commercial printers. Under Ark. Stat. Ann. § 84-1904 (r)(2) the sale of machinery or equipment used directly in manufacturing is exempt from taxation.

The sole question presented on this appeal is whether the commercial printers to whom appellant sells machinery are "manufacturers" within the meaning of Ark. Stat. Ann. § 84-1904 (r)(2). As stated in *S. H. & J. Drilling Corp.* v. *Qualls*, 268 Ark. 71 (1980), the party claiming the exemption has the burden of proving it beyond a reasonable doubt; also, any exemption provision must be strictly construed against the exemption, and to doubt is to deny the exemption. *Arkansas Beverage Co.* v. *Heath*, 257 Ark. 991, 521 S.W. 2d 835 (1975). Exemption cases are reviewed *de novo*, but the chancellor's fact findings will not be reversed unless clearly against the preponderance of the evidence. *S. H. & J. Drilling Corp., supra.* It appears that manufacturing operations have been categorized as such on a case-by-case analysis of the operations themselves, and that Arkansas has never been asked to determine whether a commercial printer is a "manufacturer" under § 84-1904 (r)(2).

The sole testimony presented to the trial court concerning the nature of commercial printing was that of appel-

lant's manager, Mr. Gerald Berry, who testified that he was well acquainted with the operations of appellant's customers, having been in the majority of printing plants himself and knowing the exact function of the equipment they used regardless of what plant was using the equipment. He testified that appellant sells to graphic arts manufacturers and that the equipment sold is used in manufacturing finished products such as stationery, wedding and business announcements, flyers, books, and business cards. Mr. Berry testified as to the various steps of manufacturing and as to some of the equipment used by commercial printers: the copy preparation stage, including typesetting, photography, and production of plates; the press stage, which may include the use of presses of various sizes with both single and multi-color capability; the binding stage, which includes the use of paper cutters, drills, stitchers, gluing machines, and folding equipment; and, the packaging stage, which requires the use of other kinds of machinery.

Mr. Berry further testified:

In offset lithography, you use a film [and] anywhere from five to twelve mill aluminum plate that's pre-sensitized, it's an aluminum pre-sensitized plate. The images, the negative, is placed over the plate and exposed through various kinds of light sources and then developed and only the image comes up. It goes on the press. It's called the offset. The plate is inked and the image is transferred from the plate to a rubber blanket therein, called the offset. This is all in one continuous motion and then the image is transferred to the paper. The actual printing is from a blanket and it is called offset lithography. So it's a much, much faster process and very versatile in color and high speed.

Mr. Berry testified that commercial printers use various raw materials to make the final printed product:

photographic paper, which is normally in rolls in a cylinder and you would use film which, in most cases, is sheet film, big-sized film that's loaded into the camera. You would use a developer and fix and ... the

chemistry we would use in developing the negative, and the next piece of material would be a pre-sensitized plate, a metal plate, that this image is transferred to. Then it goes to the press and you use several kinds of press chemistry, water and some small amount of chemistry on the press itself to have a proper balance, and of course, paper, the paper it's printed on. Now, if you want to bind the book you would have a different kind of paper for cover, you would have staples or stitching wire to stitch it together and, to package it, the wrapping paper.

The term manufacturing refers to and includes those operations commonly understood and recognized as such within its ordinary meaning. Ark. Stat. Ann. § 84-1904 (r)(2)(E) (Repl. 1980). In the ordinary use of the term we do not think of printing, photography, and binding as manufacturing. *Patterson* v. *New Orleans*, 47 La. Ann. 275, 16 So. 815 (1895), dealt with a printer of bill heads, order forms, ledgers and commercial books who cut and folded the materials to desired sizes and shapes; the Louisiana Supreme Court found that the printer was not a manufacturer. In referring to the term "manufacturer" as used in its ordinary sense the Court stated:

Its natural import is to produce an article, and in its common application refers to changing of raw material into some new and useful form ... Stationery embraces ink, pens, writing paper and envelopes, and similar articles used in an office. Those who produce these articles are manufacturers ... But we cannot extend that exemption to those who merely print on the paper bill headings or similar forms that otherwise would be written by the pen.

Commercial printing has certainly undergone technological changes over the years, but the final product remains the same — images on paper. The printer starts with manufactured paper and ink and through the use of manufactured machinery and equipment produces images on paper, a product which generally has no commercial market value other than to the individual for whom the

commercial printer performed the service. "Ordinarily, we think of a manufactured article as something to be placed on the market for retail to the general public in the usual course of business." *Morley* v. *E. E. Barber Construction Co.*, 220 Ark. 485, 248 S.W. 2d 689 (1952).

The party claiming the exemption has the burden of proving it beyond a reasonable doubt. The chancellor was not convinced, neither are we. In any event we are unable to say that the ruling of the trial court was clearly against the preponderance of the evidence.

Affirmed.