Charles D. RAGLAND *v.* Eddie W. DUMAS, d/b/a
DUMAS CONSTRUCTION COMPANY

86-297                                                    732 S.W.2d 119

Supreme Court of Arkansas
Opinion delivered June 22, 1987

*Timothy J. Leathers, Wayne Zakrzewski, Kelly Jennings, John Theis, Ann Kell, Joe Morphew, Philip Raia, Bob Jones*, by: *Joseph V. Svoboda*, for appellant.

*Shackleford, Shackleford & Phillips, P.A.*, for appellee.

TOM GLAZE, Justice. This case involves the interpretation and construction of the Arkansas Gross Receipts Act of 1941, as amended. Appellant, the Commissioner of Revenue, seeks to assess a sales tax on certain transactions performed by appellee Eddie Dumas, d/b/a Dumas Construction Company, an oil field contractor who prepares sites for oil drilling operations.

No dispute exists as to the facts and events that led to this appeal. Dumas builds temporary roads to the oil drilling sites, and prepares foundations to support drilling rigs and other heavy equipment used in the operations. On occasion, he purchases and hauls gravel and similar material to build the roads and foundations. He purchases that material from third parties, but charges his customers only his costs for the material plus a transportation fee. In this suit, appellant seeks to tax both the material costs plus the transportation fee, which represent the total amounts Dumas bills his customers on those projects requiring gravel or crushed rock.

As a result of an audit, appellant assessed Dumas sales tax, interest and a penalty in the amount of $20,907.24. After exhausting his administrative remedies, Dumas filed suit in chancery court. He argued several theories on why the sales tax should not be assessed. The chancellor agreed with one of them, finding that the extraction of oil and gas was exempt from the gross receipts tax under Ark. Stat. Ann. § 84-1904(r) and that, because site preparation and road construction were integral and direct parts of that oil and gas extraction process, such preparation and construction were exempt. The chancellor did, however, hold appellant could assess a sales tax on the clay gravel Dumas used in the construction of a foundation at one refinery—apparently finding such construction was not directly involved in the oil processing operation. Finally, the chancellor held Dumas not liable for a 10% penalty, finding there was no negligent or intentional disregard of the applicable taxing laws on the part of Dumas. On appeal, appellant argues the chancellor erred in holding that Dumas's work was exempt under § 84-

1904(r) (Repl. 1980) and that he was not liable for a penalty under Ark. Stat. Ann. § 84-4741(c) (Supp. 1985).

The standard of review for tax exemption cases is trial *de novo* on the record, and we will not reverse the chancellor's findings of fact unless they are clearly erroneous. *Western Paper Co.* v. *Qualls*, 272 Ark. 466, 615 S.W.2d 369 (1981); *S.H.& J. Drilling Corp.* v. *Qualls*, 268 Ark. 71, 593 S.W.2d 178 (1980). The party claiming an exemption from taxes has the burden of proving his entitlement beyond a reasonable doubt. *C & C Machinery, Inc.* v. *Ragland*, 278 Ark. 629, 648 S.W.2d 61 (1983). Tax exemptions must be strictly construed against exemption, and to doubt is to deny the exemption. *Arkansas Beverage Co.* v. *Heath*, 257 Ark. 991, 521 S.W.2d 835 (1975).

First, we should say we agree with appellant's contention that § 84-1904(r) is inapplicable to the situation posed here. Section 84-1904 lists a number of exemptions from the gross receipts tax, and subsection (r), upon which the chancellor relied, exempts gross receipts or gross proceeds derived from the "sale of tangible personal property consisting of machinery and equipment used directly in the extraction of oil and gas." Dumas argues (as he must in order to sustain the chancellor's holding that § 84-1904(r) applies) that the gravel he uses for site preparation and road construction purposes is "machinery" or "equipment" under that provision; thus, because the gravel (as machinery or equipment) is used directly in extracting oil, Dumas claims the gravel plus the transportation costs of delivering it to the site is exempt from taxation.

We cannot accept Dumas's argument that gravel is machinery because such a construction of the law would be inconsistent with the definition of machinery as that term has been defined by this court. In *Heath* v. *Research-Cottrell, Inc.*, 258 Ark. 813, 529 S.W.2d 336 (1975), we defined a machine as "any device consisting of two or more resistant, relatively constrained parts, which, by a certain pre-determined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work." It takes little study to arrive at the conclusion that gravel employed to construct a road totally lacks the characteristics of a machine, as that term is defined in *Heath*. Clearly, gravel does not transmit

and modify force and motion. Thus, if Dumas's argument of exemption is to prevail, it must do so based upon the fact that gravel, under the facts of this case, can be designated equipment, as that word is utilized in § 84-1904(r). Upon our careful analysis of § 84-1904(r), we cannot agree with such a contention.

Our court has never been called upon to define the term equipment in the context of a tax case and, more particularly, as that term appears in § 84-1904(r). We note initially that the word equipment has been referred to as an exceedingly elastic term, the meaning of which depends on context. Black's Law Dictionary 631 (4th ed. 1968). Here, of course, the context or situation involved is whether a contractor's gravel furnished to build temporary roads can be viewed as equipment under § 84-1904(r), used directly in the process of extracting oil. One authority relates that as the word, equipment, is used in construction contracts, it means the outfit necessary to enable the contractor to perform the agreed service, the *tools, implements* and *appliances* which might have been previously used, or might be subsequently used by the contractor in carrying on other work of like character. Ballentine's Law Dictionary 440 (1930) (Emphasis ours.). This connotation, given the word equipment by *Ballentine*, appears consistent with the usage of the term where it appears elsewhere in § 84-1904(r). For example, subsection (C) of § 84-1904(r)(2) (Repl. 1980) provides that "[h]and tools, buildings, transportation equipment, office machines and equipment, machinery and equipment used in administrative, accounting, sales or other such activities of the business involved and all other machinery and equipment not directly used in the manufacturing or processing operation are not included or classified as exempt." In sum, we believe it is clear that the General Assembly, by the use of the terms machinery and equipment, intended implements, tools or devices of some degree of complexity and continuing utility and not materials, such as gravel and crushed rock, that become fully integrated into a temporary road, the utility of which ends upon the termination of each oil-extraction project.

While we agree Dumas's work is not exempt under § 84-1904(r), we cannot agree his transactions with his customers are subject to the Gross Receipts Act. In this respect, we emphasize that, except as is specifically provided, the term sale

under that Act does not include the furnishing or rendering of service(s). Ark. Stat. Ann. § 84-1902(c) (Repl. 1980). Importantly, we find nowhere in the Act that the type contracting services provided by Dumas are specifically made subject to the gross receipts tax. *See* Ark. Stat. Ann. § 84-1903 (Repl. 1980) and (Supp. 1985). Under § 84-1902(c) of the Act, "sale," in relevant part, is defined as the transfer of either title or possession for a valuable consideration of tangible personal property, regardless of the manner, method, instrumentality or device by which such transfer is accomplished. Section 84-1902(i) further provides that all contractors are deemed to be consumers or users of all tangible personal property, including materials, supplies and equipment used or consumed by them in performing any contract and the sales of all such property to contractors are taxable sales within the meaning of the Act. *See* Ark. Stat. Ann. § 84-1903 (Repl. 1980). By regulation, the State has defined "contractor" as any person who contracts or undertakes to construct, manage or supervise the construction, erection or substantial modification of any building or other improvement or structure affixed to real property. *See* Arkansas Department of Finance and Administration *Regulations—Arkansas Gross Receipts Tax* GR-3(c) (January 1, 1982).

In view of the foregoing authority, and particularly §§ 84-1902(i) and -1903, the appellant could have assessed a sales tax on the transactions between Dumas and the third parties who sold him the gravel. *Compare John B. May Co., Inc.* v. *McCastlain*, 244 Ark. 495, 426 S.W.2d 158 (1968) (contractor was consumer or user of items used in performance of the contract and court held sale to contractor was taxable). *See also Bowers* v. *Oklahoma Tax Commission*, 51 F.Supp. 652 (W.D. Okla. 1943) (under Oklahoma Use Tax Statute—almost identical to Ark. Stat. Ann. § 84-1902(i)—contractors, who were obliged to furnish material to build huts on army base, were users, not vendors, and therefore subject to the state use tax).

Here, appellant, from our review of the record at least, made no attempt to assess a tax on the gravel or construction material at the time Dumas purchased it from his suppliers. Instead, he seeks here to increase the amount of the taxable sale by adding Dumas's transportation costs to the material, thus requiring him to collect the tax from his customers on this greater, total price. *See*

*Belevedere Sand & Gravel Co.* v. *Heath*, 259 Ark. 767, 536 S.W.2d 312 (1976) (wherein Belevedere sold sand and gravel to its customers and this court upheld the State's taxation on the total amount charged the customer, including hauling charges; unlike in the instant case, Belevedere owned the material delivered to its customers, and the actual delivery was an added service or accommodation to Belevedere's customers).

In sum, we believe it is clear from a careful study of the Gross Receipts Act, that our General Assembly intended to impose the tax on the materials in issue here at the time of the sale between the supplier and the contractor. Thus, the Act provides for assessment of a tax when Dumas purchases his gravel, and if we accepted appellant's argument here, the materials could again be taxed when Dumas bills his customers for constructing the roads on the site. A presumption exists that the General Assembly had no intention to impose a double taxation on the same property, at least, unless the General Assembly expressly provided by law for such double taxation. *See* 84 C.J.S. *Taxation* § 41 (1954) and 68 Am. Jur.2d *Sales and Use Taxes* § 13 (1973). The General Assembly not only did not provide that a double tax be imposed, it also clearly exempted services, which we hold includes the type that Dumas performs here.

Consistent with this holding, we believe it is significant that the parties stipulated that the cost of the actual materials Dumas provided his customers constituted only ten percent of the expenses involved in the transportation of the materials and the work performed on the oil-extracting sites. Thus, the record supports the view that Dumas's delivery of the material to the sites was merely incidental to the services he provided his customers. *See* 68 Am.Jur. 2d *Sales and Use Taxes* § 76 (1973) (delivery of tangible personal property is not a sale at retail if it is merely incidental to a special service performed for the purchaser.)

In this *de novo* review, we hold that the transactions between Dumas and his customers were not sales and subject to assessment under the Arkansas Gross Receipts Act; and, accordingly, no penalty against Dumas should be imposed. Therefore, we affirm the chancellor's holding but modify it to the extent that all the monies paid by Dumas shall be refunded him rather than

subtracting that amount the chancellor found due based on the construction of the foundation at the MacMillan Petroleum, Inc. refinery.

Affirmed as modified.