Charles D. RAGLAND, Commissioner of Revenue Division,
Department of Finance and Administration *v.* GENERAL
TIRE AND RUBBER COMPANY, INC.

88-99                                               763 S.W.2d 70

Supreme Court of Arkansas
Opinion delivered January 9, 1989

*Timothy J. Leathers, John H. Theis, Ann Kell, Joe Morphew, Robert L. Jones, William E. Keadles,* and *Rickey L. Pruett,* by: *Philip Raia,* for appellant.

*Friday, Eldredge & Clark,* by: *Barry E. Coplin* and *William Thomas Baxter,* for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Charles D. Ragland (Commissioner), challenges the trial court's determination that the appellee, General Tire and Rubber Company, Inc. (General Tire), is exempt under Ark. Code Ann. § 26-52-401(12)(A) and (B) (Supp. 1987) from paying use tax on chemicals used in the manufacturing of tennis balls and rubber moldings. We hold that the trial court erred in its ruling. Therefore, we reverse the judgment entered in favor of General Tire and remand the case for further proceedings.

The Commissioner conducted a use tax audit of General Tire's records for the audit periods of August 1, 1979, through June 30, 1982, and July 1, 1982, through June 30, 1984. Based upon purchases by General Tire of the chemical hexane, which it uses in the manufacturing of tennis balls; toluol, which it uses to make rubber moldings; and a compound referred to as "slab dip," the Commissioner assessed additional tax, interest, and penalties in the amount of $32,695.63 for the first audit period and $23,563.13 for the second audit period. General Tire had treated these chemicals as exempt from the use tax.

In challenging this assessment, General Tire exhausted its administrative remedies as set forth in Ark. Code Ann. § 26-18-404 (1987). Unsuccessful at the administrative level, General Tire filed suit in chancery court. After considering the testimony, exhibits, stipulations, and briefs, the chancellor determined that General Tire's purchases of hexane, toluol, and "slab dip" were exempt from the use tax and that General Tire had established its right to the exemption. The chancellor ordered that the tax, interest, and penalty assessments against General Tire be set aside. The Commissioner appeals only from the portion of the order setting aside the tax and interest assessments on General Tire's purchases of hexane and toluol.

There is a presumption in favor of the taxing power of

the State, and the claimant has the burden of establishing the right to an exemption beyond a reasonable doubt. *Heath* v. *Westark Poultry Processing Corp.*, 259 Ark. 141, 531 S.W.2d 753 (1976). *See also C.J.C. Corp.* v. *Cheney, Commissioner*, 239 Ark. 541, 390 S.W.2d 437 (1965). Any tax exemption provision must be strictly construed against the exemption. *Qualls* v. *Georgia-Pacific Corp.*, 269 Ark. 426, 602 S.W.2d 646 (1980). Any doubt suggests that the exemption should be denied. *Id.* On appeal we review exemption cases *de novo* and do not set aside the findings of the chancellor unless they are clearly erroneous. *Southern Steel & Wire Co.* v. *Wooten*, 276 Ark. 37, 631 S.W.2d 835 (1982).

■ The use tax (compensating tax) assessments against General Tire on hexane and toluol were made pursuant to Ark. Code Ann. § 26-53-106 (1987) [the "Arkansas Compensating Tax Act of 1949," Ark. Code Ann. §§ 26-53-101—26-53-206 (1987)]. Ark. Code Ann. § 26-53-112 (1987) provides that the exemptions for tangible property under the "Gross Receipts Act of 1941" [Ark. Code Ann. §§ 26-52-101 — 26-52-804 (1987)] are applicable to the "Compensating Tax Act."

Ark. Code Ann. § 26-52-401 (Supp. 1987) describes transactions which are exempt from the gross receipts tax. Paragraphs (12)(A) and (B) provide as follows:

(12)(A) Gross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased, whether within or without the state if the sales within the state are made to persons to whom sales tax permits have been issued as provided in § 26-52-202;

(B) Goods, wares, merchandise, and property sold for use in *manufacturing*, compounding, processing, assembling, or preparing for sale can be classified as having been sold for the purposes of resale or the subject matter of resale only in the event the goods, wares, merchandise, or property becomes a *recognizable integral part of the manufactured, compounded, processed, assembled, or prepared products*. The sales of goods, wares, merchandise, and property not conforming to this requirement are classified for the purpose of this act as being 'for consump-

tion or use.' (Emphasis added.)

In *Hervey* v. *International Paper Co.*, 252 Ark. 913, 483 S.W.2d 199 (1972), we considered the question of whether International Paper was entitled to a use tax exemption under Ark. Stat. Ann. § 84-1904(i) (Repl. 1960), currently Ark. Code Ann. § 26-52-401(12)(A) and (B) (Supp. 1987), on chemicals and other substances used in the manufacturing of paper.

In *Hervey*, the manufacturer made paper by cooking wood at a high temperature in a white "cooking liquor" in order to separate cellulose from other substances found in wood. In this process the white liquor turned black when the unwanted substances were absorbed. After completion of the cooking procedure, the black liquor was separated from the cellulose. However, a 100% separation was too expensive. Consequently, traces of the chemicals used in the liquor remained in the cellulose and could be detected by chemical analysis in the finished paper.

We held that one of the chemicals present in the "cooking liquor," sulfur, did not come within the "sale for resale" exemption since the sulfur evaporated or was consumed during the manufacturing process.

As for other ingredients, such as a defoaming agent used to inhibit the formation of foam on the "cooking liquor," and acetic acid, which was used to make dye more solvent, we held that they were not integral parts of the paper in that they were not essential to the completeness of the finished product, but rather found in the paper only because it was economically impractical to remove them.

In addition, we held that various other ingredients, such as Kelgin, Ludox, aluminum sulphate, and sodium aluminate, qualified for the statutory exemption in that they were added to the paper to improve the finished product and became recognizable integral parts of it.

 Under Ark. Code Ann. § 26-52-401(12)(A) and (B), General Tire is exempt from paying use tax on its purchases of hexane and toluol only if the two chemicals become recognizable integral parts of the manufactured tennis balls and rubber moldings.

The manufacturing of tennis balls is done in stages. First, natural and synthetic materials are blended together. The rubber is then formed into pellets and pressed into ball halves. Next, an adhesive is made by first breaking the rubber down until its consistency is somewhere between bread dough and Silly Putty. This material is taken to the mixing room where hexane and curatives are added to it. Hexane, a solvent which evaporates into the air as it is mixed, lowers the viscosity of the adhesive; curatives cause the rubber to cure or vulcanize.

Once the adhesive is made, it is applied to the ball halves. The ball halves are then pressed together in a large high pressure press. This molds the halves together and traps air pressure in the ball. Next, the core is prepared to receive a felt covering by dipping it in an adhesive containing a higher content of green tack than that used to press the ball together. Green tack is an adhesive which allows the material to stick together without going through the curing operation.

In a third and separate operation, the felt is prepared by applying an adhesive with a viscosity different than that used in the other processes to the back of the felt itself and dipping it in another adhesive. After the felt is dry, it is cut into the shape of a dumbbell. Next, the felt is dipped in another adhesive in order to make a seam and is placed on the ball core. The ball is then vulcanized and the logo applied. Finally, the ball is placed in a pressurized container and prepared for shipment.

William C. Douglas, an expert for General Tire, testified that only .022% of the hexane used to make a tennis ball is detectable in the finished ball and that the amount of hexane in the ball decreases with use. In addition, he testified that the tennis balls could not be made without hexane.

The manufacturing process for rubber moldings is as follows: First, the rubber moldings are made. Next, toluol (a carrier solvent) is mixed with polyurethane paint to thin the paint. Finally, the paint is applied to the moldings by running them through an automated painting device. Toluol is the carrying medium for the paint. The urethane makes the surface of the moldings slick.

Robert K. Sampson, another expert for General Tire,

testified that most of the toluol evaporates during the manufacturing process. He also testified that he is quite sure that toluol is detectable in the paint. However, he did not conduct a test to conclusively establish whether it is or not.

In scrutinizing the manufacturing process, we conclude that hexane and toluol do not become integral parts of the tennis balls and rubber moldings. First, most of the hexane and toluol evaporates in the manufacturing of both products. *See Hervey, supra.* Secondly, we are not convinced that hexane and toluol are essential to the completeness of the finished balls and moldings. *Id.* Granted, there was expert testimony at trial that hexane and toluol are necessary in the manufacturing process of both products. However, the record is devoid of testimony that the finished products would cease to perform or would perform unsatisfactorily if the hexane and toluol remaining in the products were totally removed from them.

In light of our finding that hexane and toluol are necessary in the manufacturing process of both products but do not become integral parts of the balls and moldings, it is unnecessary for us to consider whether the chemicals become recognizable parts of the products.

In conclusion, General Tire is not entitled to an exemption for its use of hexane and toluol. The trial court was clearly erroneous in ruling to the contrary. We reverse and remand this case for proceedings consistent with this opinion.

Reversed and Remanded.