Jim C. PLEDGER, Commissioner of Revenues *v.* ETHYL CORPORATION

88-321                                                771 S.W.2d 24

Supreme Court of Arkansas
Opinion delivered June 5, 1989
[Rehearing denied July 3, 1989.]

*Timothy J. Leathers, John Theis, Joe Morphew, Robert L. Jones, William E. Keadle, Ricky L. Pruett, and Cora L. Gentry, by: Philip Raia,* for appellant.

*Crumpler, O'Conner & Wynne,* by: *William J. Wynne,* for

appellee.

STEELE HAYS Justice. Arkansas levies a severance tax on each producer of natural resources. The rate of tax on oil is 5% of the market value at the time and place of severance, unless the average monthly production of oil is ten barrels or less per day per well. In the latter event the rate is 4%. The lower rate is intended to maximize the recovery of oil, including the stimulation of secondary recovery efforts where oil production is only marginally economical.

The appellant, after auditing the appellee's records for July 1984 through June 1986, determined that an additional tax of $50,053.18 was owed, plus $4,127.98 in interest and a $5,005.33 penalty. The additional tax assessment was based upon a rate of 5%, rather than the 4% rate as calculated by the appellee. The appellee counted the injection wells and inactive wells in computing the average oil production per well per day because these wells are utilized in secondary recovery efforts to obtain oil from active, producing wells. By counting the injection and inactive wells, the average daily production per well resulted in ten barrels or less per day, qualifying for the 4% severance tax.

After unsuccessfully exhausting the administrative remedies protesting the additional tax, the appellee filed suit pursuant to Ark. Code Ann. § 26-18-507 (1987), claiming a refund for the erroneous and unlawful assessment of taxes. The chancellor held that injection wells should be counted in determining the daily production per well per month for severance tax purposes. Additionally, the chancellor held that wells classified as inactive wells which are in fact active for any part of the calendar month should be counted in calculating the daily production per well. Thus, the chancellor found that the appellee was entitled to a full refund.

On appeal, the issue is whether injection wells and inactive wells, both used as part of secondary recovery efforts in a unitized oil field to ensure the production of oil, may be counted for purposes of calculating the average rate of production of oil when imposing the severance tax. This case requires interpretation of Ark. Code Ann. § 26-58-111(6) (1987), which states:

The severance tax is to be predicated upon the quantity

severed and at the following rates: * * * * * (6) On oil, five percent (5%) of the market value at time and point of severance. However, whenever *the production of oil from a well* which is measured separately or from a group of wells which is measured separately averages ten (10) barrels or less per well per day during any calendar month, the privilege or license tax on oil produced from that well or group of wells during that month shall be computed at the rate of four percent (4%) of the market value at time and point of severance. The director shall have the power to promulgate such reasonable rules and regulations as shall be necessary to effectively enforce the foregoing provisions. [Our emphasis.]

■  Although injection wells are necessary in the production of oil from a group of wells on a unitized field, the appellant contends that this statute should be interpreted so that only those wells which produce oil may be counted in calculating the average rate of production per well per month. We agree. Recognizing the cooperative efforts and the direct relationship between injection wells and oil producing wells on a unitized field, nevertheless, we believe that the intent of the Legislature in passing this statute was to allow only oil producing wells to be counted in calculating production per well per day for any calendar month.

■  The first rule to be applied in statutory construction is to give the words in the statute their usual and ordinary meaning. If there is no ambiguity we give a statute effect just as it reads. *Woodruff* v. *Shockley*, 297 Ark. 595, 764 S.W.2d 431 (1989); *Chandler* v. *Perry-Casa Public Schools*, 286 Ark. 170, 690 S.W.2d 349 (1985). Giving the words and the juxtaposition of the words in the statute their usual, ordinary meaning, the phrase "production of oil from a well ·or from a group of wells" plainly means oil producing wells. Therefore, in order for wells to be counted in the production per day figure, the wells must be oil producing wells. Testimony from Ms. Delores Davis, auditor for severance taxes, revealed a lack of ambiguity concerning this statute as "none of the approximately 71 other units had ever tried to use injection wells in their well count," and thus there had not been a need for the Commissioner to promulgate rules and regulations concerning the computation of the oil severance tax.

Furthermore, Ark. Code Ann. § 26-58-111(6) (1987) provides a one percent (1%) exemption from severance tax for those wells which average ten (10) barrels or less per well per day during any calendar month. These wells pay only a 4% tax rate, while all other wells are assessed tax at a 5% rate. There is a presumption in favor of taxing power of the State. *Ragland* v. *General Tire and Rubber Co.*, 297 Ark 394, 763 S.W.2d 70 (1989). Any tax exemption provision must be strictly construed against exemption, and to doubt is to deny the exemption. *Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 119 (1987); *Qualls, Director* v. *Georgia-Pacific Corp.*, 269 Ark. 426, 602 S.W.2d 646 (1980).

REVERSED.