The Honorable David Bisbee State Senator 14068 Pyramid Drive Rogers, AR 72758-0116
Dear Senator Bisbee:
You have presented the following questions for my opinion:
 (1) Do Fayetteville and Bentonville have the authority under A.C.A. § 26-75-602(c)(2) to levy an advertising and promotion tax specifically on catering businesses?
 (2) If so, is it lawful for both cities to tax the same transaction — that of a Bentonville caterer who caters a function in Fayetteville? If not, which city may tax the caterer?
You have provided me with copies of Fayetteville's and Bentonville's ordinances that address this issue.
RESPONSE
Question 1 — Do Fayetteville and Bentonville have the authority underA.C.A. § 26-75-602(c)(2) to levy an advertising and promotion taxspecifically on catering businesses?
As an initial matter, I must note that the Attorney General is not normally in a position to construe local ordinances. The task of construing local ordinances is one that usually must be undertaken by a court or other entity who has the authority to determine various factual matters of local concern that could impact upon the intended meaning and effect of the ordinance. Nevertheless, because the state law that governs your question necessarily requires a reading of the local ordinances in question, I will interpret these ordinances to the extent necessary for an application of state law.
It is my opinion that Fayetteville and Bentonville do have the authority under A.C.A. § 26-75-602(c)(2) to levy an advertising and promotion tax on catering businesses.
A.C.A. § 26-75-602(c)(2), which is part of the Advertising and Promotion Commission Act, states:
 (c) The tax authorized in this subchapter shall be upon any one (1) or more of the following, as specified in the levying ordinance:
* * *
 (2) The portion of the gross receipts or gross proceeds received by restaurants, cafes, cafeterias, delicatessens, drive-in restaurants, carry-out restaurants, concession stands, convenience stores, grocery store-restaurants, and similar businesses as shall be defined in the levying ordinance from the sale of prepared food and beverages for on or off-premises consumption, but such tax shall not apply to such gross receipts or gross proceeds of organizations qualified under section 501 (c)(3) of the federal Internal Revenue Code.
A.C.A. § 26-75-602(c)(2) (emphasis added).
In my opinion, the above quoted statutory language does authorize cities to levy an advertising and promotion tax on catering businesses. I base this conclusion on one of the fundamental principles of statutory interpretation: statutory language must be interpreted by giving the words of the statute their ordinary meanings in common usage. ArkansasDept. of Environ. Qual. v. Brighton Corp., 02-321, 102 S.W.3d 458 (Ark. 2003). I believe that in common parlance, a catering business would universally be deemed to constitute a business that is "similar" to the other food service businesses that are listed in A.C.A. §26-75-602(c)(2). Accordingly, I conclude that cities are authorized to levy an advertising and promotion tax on catering businesses under A.C.A. § 26-75-602(c)(2).
It is my opinion further that both Fayetteville and Bentonville have enacted ordinances that suffice to include catering businesses in the group of businesses upon which the advertising and promotion tax may be levied.
Fayetteville's ordinance (Ordinance No. 4318) explicitly provides that its AP tax is applicable to caterers, which it defines as follows: "Caterers are for profit businesses or persons who deliver or serve catered food or beverages at a location within the city limits of Fayetteville." Fayetteville Ordinance No. 4318, amending § 35.31 of theCode of Fayetteville. This ordinance clearly authorizes a tax on caterers.
Bentonville's ordinance (Ordinance No. 3.16.01(B)) does not explicitly mention caterers, but rather, mirrors the language of the statute, providing that the tax will be levied on "the portion of the gross receipts or gross proceeds received by restaurants, cafes, cafeterias, delis, drive-in restaurants, carry-out restaurants, concession stands, convenience stores, grocery store delis, and similar businesses from the sale of prepared food and beverages for on or off-premises consumption[.]" Bentonville Ordinance No. 3.16.01(B). Although this language does not explicitly mention caterers, it is my opinion that, like the language of the statute, it can readily be interpreted to include caterers within the scope of its application. I base this conclusion on one of the fact that the Arkansas appellate courts have held that the same rules of statutory interpretation that apply to state legislation should be applied to municipal ordinances. Rolling Pines v.City of Little Rock, 73 Ark. App. 97, 40 S.W.3d 828 (2001); Stricklin v.Hays, 332 Ark. 270, 965 S.W.2d 103 (1998). Accordingly, the language of Bentonville's ordinance must be interpreted by giving the words their ordinary meanings in common usage. Again, in common parlance, a catering business is deemed to constitute a business that is "similar" to the other food service businesses that are listed in Bentonville's ordinance.
For these reasons, I conclude that both Fayetteville and Bentonville may levy an advertising and promotion tax on catering businesses under A.C.A. § 26-75-602(c)(2) and under their respective ordinances.
Question 2 — If so, is it lawful for both cities to tax the sametransaction — that of a Bentonville caterer who caters a functionin Fayetteville? If not, which city may tax the caterer?
It is my opinion that it is not lawful for both cities to tax the same transaction. Although the Arkansas Supreme Court has not addressed the issue of double taxation in the context of the Advertising and Promotion Commission Act (A.C.A. § 26-75-602 through -618), it has done so in interpreting the Gross Receipts Act (A.C.A. § 26-52-101 et seq.). With regard to that act, the court has stated that "a presumption exists that the General Assembly had no intention to impose a double tax[.]" SeeRagland v. Dumas, 292 Ark. 515, 732 S.W.2d 119 (1987). I believe that the court would apply the same presumption to the advertising and promotion tax, which is of course a type of "gross receipts tax." See A.C.A. §26-75-602. In light of this presumption, I must interpret the Advertising and Promotion Commission Act not to permit double taxation. Moreover, the Advertising and Promotion Commission Act is readily interpretable in this manner; the provisions of the act lend themselves to an interpretation under which the tax in question may be levied only once upon a transaction.
The question of which city may tax the transactions of a catering business is more difficult, however. The act does not squarely address this question. Indeed, although the language of the act is clearly broad enough to include catering businesses within the scope of its application (as discussed in response to Question 1), that language nevertheless appears to indicate that the General Assembly did not specifically contemplate how the tax should be applied in instances in which a business such as a catering business is located in one city but conducts transactions in another city. The issue is thus unclear from the specific language of the act, and clarification by the General Assembly is well-warranted.
Although persuasive arguments can be made on both sides that given the intent of the act, one or the other of the two cities should be permitted to tax the transaction, these arguments are readily met with counterarguments that would support taxation by the other city. Moreover, allowing a patchwork approach to the taxation, in which the various cities tax the transaction in different ways will undoubtedly lead either to double taxation, or to a gap in taxation. For example, if some cities tax all transactions that occur within the city, and other cities tax all transactions by businesses located within the city, some businesses will be taxed twice, and others will avoid taxation altogether by hosting events and taking payment only in locations that are outside of any city limits.
In my opinion, the most fair and reasonable interpretation that would avoid these problems and inconsistencies and that would at the same time be consistent with the apparent intent of the act would be the following interpretation: If the city in which the catering business is located has an advertising and promotion tax, that city, rather than the city in which the event is held, may tax the transaction. However, if the city in which the catering business is located does not have an advertising and promotion tax (or if the caterer is not located in a city), the city in which the event is held may tax the transaction (assuming of course that that city has an advertising and promotion tax). Accord, Op. Att'y Gen. No. 95-094. I will explain below the reasoning upon which I base this interpretation. I emphasize, however, that this approach is not mandated by the language of the act; rather, it is the interpretation that I suggest would be most effective in avoiding problems and inconsistencies in the application of the tax. I acknowledge, however, that this approach is not without its own problems and inequities, and I urge the General Assembly to clarify this issue.
The advertising and promotion tax that is authorized by the Advertising and Promotion Commission Act was intended to authorize cities to raise revenue for the purpose of improving themselves in ways that will attract tourists, thus further increasing revenues for those cities and for the businesses that attract tourists to those cities. This intent is reflected in the wording of the original act that authorized the advertising and promotion tax, Act 185 of 1965. It contained the following language:
 It has been found and is declared by the General Assembly that cities having a population of 25,000 inhabitants and more are critically in need of revenues for the promotion of the economic well being of the inhabitants thereof to prevent decline and insure growth and progress, and that enactment of this measure will provide an appropriate method of securing such public interest.
Acts 1965, No. 185, § 9.
The same intent is reflected in later amending acts. For example,Act 626 of 1989 stated:
 It is hereby found and determined by the General Assembly that some cities in the state are in urgent need of additional revenues to finance tourist oriented facilities to promote the tourist industry in the state and to thereby produce much needed general revenue receipts for the state [of] Arkansas; that this act is designed to authorize certain cities to increase the tax on gross receipts of hotels, motels and restaurants in such cities to produce such essential revenues[.]
Acts 1989, No. 626, § 7.
Under the act's methodology, both the city and the tourism businesses that attract tourism business to the city will presumably receive a benefit. The act's method of raising the needed revenue was to authorize the levy of a tax on the businesses that will likely attract tourist revenue to the city, and that will, in turn, benefit from the increased tourism that will result from the uses that will be made by the tax proceeds. This method allows both the city and the tourism businesses that attract business to the city to receive a benefit.
Clearly, both the city in which a catering business is located, and the cities in which it hosts events, receive a benefit from that caterer's business. The caterer, in turn, receives a benefit from the tourism-related improvements made by both cities that will bring in more business. However, the city in which the caterer is located will presumably receive the primary benefit from the presence of that business in the city (at least indirectly), through such means as the establishment of the business's bank accounts, the business's (and its owners' and employees') expenditures and payment of sales taxes, the business's (and its owners' and employees') addition to the property tax base, its investment in community projects, etc. Although the cities in which the caterer hosts events also receive a benefit from the business of the caterer, the benefit to those cities can be presumed to be secondary to the benefit received by the city in which the caterer is located. I acknowledge that this result will not always be the case; however, it can safely be presumed to be the case most consistently.
It follows, thus, that the city in which the caterer is located should have the primary right to tax the caterer's transactions. However, if the city in which the caterer is located does not have an advertising and promotion tax (or if the caterer is not located in a city), but the other city does have such a tax, the purpose of the act will not be served and the benefit that was intended to result from the act will be lost if that other city is not allowed to tax the caterer's transaction for an event held in the other city. In this way (by sustaining the intended primary benefit to the city in which the caterer is located, and by permitting the other city to benefit secondarily), both cities will generate improvements that will ultimately draw tourists and will bring the intended benefits both to themselves and to the caterer.
I believe that while this interpretation is not without flaws, it willmost consistently serve the purpose of the Advertising and Promotion Commission Act. I do not intend to suggest that the intended benefits of the act could not occur under other interpretations of the act; rather, I suggest that they would occur less consistently.
For this reason, I opt for an interpretation of the act under which the cities in which catering businesses are located have the primary right to tax those businesses' transactions, if those cities have an advertising and promotion tax, and if they do not have such a tax (or if the caterer is not located in a city), the cities in which those businesses conduct events may tax the transaction. Under this interpretation, Bentonville may tax the catering business's transactions if Bentonville has an advertising and promotion tax, and Fayetteville may tax transactions for events held in Fayetteville only if Bentonville does not have such a tax (and Fayetteville does have such a tax).[1]
Once again, I emphasize that this interpretation is not mandated by the Advertising and Promotion Commission Act. Rather, it is the interpretation that I find would most consistently serve the intent and purpose of the act. The General Assembly should clarify this issue.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I note that under this interpretation, the language of Fayetteville's ordinance may be both too far-reaching and too narrow, because it would both permit taxation on businesses from other cities, and at the same time would preclude taxation on caterers located in Fayetteville who cater events in other cities.