The Honorable Jodie Mahony State Senator 106 West Main, Suite 406 El Dorado, AR 71730-5693
Dear Senator Mahony:
You have requested an Attorney General opinion concerning a situation involving Mr. Jerrell Clark, the former Staff Executive Director of the Arkansas Public Service Commission (APSC).
BACKGROUND INFORMATION
You explain in your correspondence that Mr. Clark was a longtime employee of the APSC until May 20, 1999. In his last position of Staff Executive Director, Mr. Clark's duties included directing the APSC General Staff's responses to filings before the APSC, ensuring compliance with state statutes and regulations pertaining to utilities, initiating any appropriate investigations or generic proceedings, and ensuring responses to inquiries from ratepayers, utilities, or elected officials. Mr. Clark was responsible for the Commission's "General Staff" and was not a member of the Commission's "Personal Staff." He was a "Grade 99" state employee and did not have a formal job description.
As a further basis for your questions, you have included the following information about certain matters pending before the APSC, and Mr. Clark's involvement in them:
EAI Earnings Review
An earnings review mechanism was created in Entergy Arkansas, Inc.'s (EAI's) most recent general rate case. Under that mechanism, EAI's earnings are subject to an annual review. Any overearnings are deposited into an account that will be used to fund any ratepayer stranded cost responsibility or refunded to ratepayers. Although filed in an ongoing docket proceeding at the APSC, each annual earnings review considers EAI's earnings for a separate year independent of any prior earnings review filed previously in the ongoing docket. Mr. Clark has participated personally and substantially in the original and each subsequent annual earnings review filed to date in the ongoing docket while at the APSC.
EAI Grand Gulf Rider
The Federal Energy Regulatory Commission (FERC) assigns certain costs associated with the Grand Gulf nuclear electric generating station to EAI and its customers. Each year, the APSC approves a rate schedule designed to allow EAI to recover a portion of its FERC-allocated share of Grand Gulf costs from EAI's Arkansas ratepayers. Each annual review is filed in a separate AOSC docket proceeding and addresses the rate to be collected for a separate year. Mr. Clark's involvement with the annual Grand Gulf Rider while at the APSC included assigning of appropriate General Staff members to be responsible for developing Staff's position in the docket, monitoring Staff's progress to ensure that all filing dates were met, participating in Staff team meetings to discuss the merits of various issues arising during the development of Staff's case, and being available if needed for consultation while Staff was developing its position on the various issues in the docket.
Entergy Transco Proposal
Entergy Corporation recently filed a petition with FERC, on behalf of EAI and the other Entergy operating companies, seeking a declaratory order that, inter alia, Entergy's proposed for-profit transmission company ("Transco") meets the FERC's standards for an independent electric transmission system operator. EAI has announced that it will likely seek APSC approval to transfer its transmission assets and operations to Transco if FERC grants the requested declaratory order. Mr. Clark's involvement with Entergy's Transco proposal while at the APSC involved conceptual discussions regarding Entergy's preference for a Transco rather than an independent system operator during meetings held in conjunction with electric restructuring proceedings held by the Commission in 1998. The Commission has closed those proceedings. Mr. Clark was not personally or substantially involved in Entergy's recently filed petition with FERC, and filings at FERC regarding this matter were not part of Mr. Clark's official responsibilities while at the APSC.
Fuel Costs Audit
The APSC Staff, and/or the AOSC on its own motion or upon complaint, periodically initiates proceedings to investigate the reasonableness of utilities' fuel costs. Mr. Clark's involvement with fuel cost audits while at the APSC was the assignment of appropriate General Staff members to be responsible for developing Staff's position in the docket, monitoring Staff's progress to ensure that all filing dates were met, participation in Staff team meetings to discuss the merits of various issues arising during the development of Staff's case and being available if needed for consultation while Staff was developing its position on the various issues in the docket.
Special Contracts
The APSC acts on utility requests to offer "special contracts" at less than generally available tariff rates to certain customers in special circumstances. Mr. Clark's involvement with special contract filings while at the APSC was the assignment of appropriate General Staff members to be responsible for developing Staff's position in the docket, monitoring Staff's progress to ensure that all filing dates were met participation in Staff team meetings to discuss the merits of various issues arising during the development of Staff's case and being available if needed for consultation while Staff was developing its position on the various issues in the docket.
Electric Restructuring Proceedings
Act 1556 of 1999 (the Electric Consumer Choice Act) calls for restructuring the electric industry in Arkansas to permit competition for the generation of electricity. The APSC must initiate numerous rulemaking proceedings as well as utility-specific proceedings to implement Act 1556.
In 1998, as a result of a settlement agreement in an EAI rate case proceeding, the APSC conducted several generic proceedings concerning the feasibility and desirability of electric restructuring. Those proceedings were concluded in October of 1998 and were officially closed on December 8, 1998, prior to the beginning of the 1999 General Assembly. Mr. Clark participated personally and substantially in the earlier generic proceedings that were concluded in October of 1998. However, he was never officially responsible for, nor did he participate personally or substantially on behalf of the APSC in the process that ultimately resulted in Act 1556 of 1999.
ANO Nuclear Decommissioning
Trust funds have been created to ensure that monies are available at the time that EAI's Arkansas Nuclear One (ANO) electric generating facility must be decommissioned. The trust corpus is supplied by ratepayers as part of their EAI electric rates. EAI must file an updated cost estimate every five years, and the update is subject to APSC approval. Annually, the APSC revises the rates for decommissioning to ensure that collections are on target to meet the costs projected in the most recent five-year update. Both the five-year and annual updates are filed in the same APSC docket, but each filing takes into consideration new developments since the last update. Mr. Clark's involvement in past ANO nuclear decommissioning filings included assigning appropriate General Staff members to be responsible for developing Staff's position in the docket, monitoring Staff's progress to ensure that all filing dates were met, participating in Staff team meetings to discuss the merits of various issues arising during the development of Staff's case, and being available if needed for consultation while Staff was developing its position on the various issues in the docket.
Rate Cases
Mr. Clark has been personally and substantially involved in general rate cases for virtually every utility in Arkansas. Each rate case is a separately docketed APSC proceeding.
Gas Purchasing Practices
Over the years, Mr. Clark has been personally and substantially involved in various APSC proceedings to review natural gas utility gas purchasing and transportation contracting plans and practices to ensure that the costs incurred were prudent based on information which was available at the time of the various APSC proceedings.
FERC Pipeline Capacity NOPR
FERC has initiated a notice of proposed rulemaking (NOPR) concerning policy for determining the price, terms and conditions of service related to interstate natural gas pipeline transportation service. Mr. Clark was not personally or substantially involved in this proceeding, and filings at the FERC regarding this matter were not part of Mr. Clark's official responsibility.
You indicate that prospective employers have approached Mr. Clark about employment. His responsibilities for such employers would include involvement in matters that come before the APSC, including, but not limited to, appearing before the APSC as an expert witness. Mr. Clark would like to pursue these employment offers, but both he and the prospective employers are unsure about the degree of latitude or discretion available to former state employees under A.C.A. § 19-11-709.
QUESTIONS PRESENTED
In light of all of the foregoing, you have presented the following questions:
 (1) Does A.C.A. § 19-11-709 apply to former state employees outside the procurement context?
 (2) Are contested matters outside Mr. Clark's "official responsibility" as that phrase is used in A.C.A. § 19-11-709(b)(2), if Mr. Clark was not personally and substantially involved and if he had no apparent authority to direct state action on such matters?
 (3) May Mr. Clark represent an employer in future annual EAI earnings reviews filed in the ongoing docket?
 (4) May Mr. Clark represent an employer in future annual EAI Grand Gulf Rider update filings?
 (5) May Mr. Clark represent an employer in the FERC proceeding on Entergy's Transco proposal?
 (6) May Mr. Clark represent an employer in any APSC proceeding on EAI's Transco proposal?
 (7) May Mr. Clark represent an employer in an APSC proceeding on the reasonableness of a utility's fuel costs if an APSC General Staff investigation (but not a formally docketed APSC proceeding) of that utility's fuel costs was pending while Mr. Clark was employed by the APSC?
 (8) May Mr. Clark represent an employer in an APSC proceeding on the reasonableness of a utility's fuel costs if an APSC General Staff investigation of that utility's fuel costs was not pending while Mr. Clark was employed by the APSC?
 (9) Under what circumstances may Mr. Clark represent an employer in an APSC proceeding on the reasonableness of a utility's fuel costs?
 (10) May Mr. Clark represent an employer in future APSC proceedings to determine whether a proposed special contract is in the public interest?
 (11) May Mr. Clark represent an employer in APSC proceedings that will be necessary to implement the provisions on electric restructuring resulting from the passage of Act 1556 of 1999 when Mr. Clark was never officially responsible for nor did he participate personally and substantially on behalf of the APSC in the process that ultimately resulted in that Act?
 (12) May Mr. Clark represent an employer in APSC proceedings on the annual ANO decommissioning cost updates?
 (13) May Mr. Clark represent an employer in APSC proceedings on the five-year ANO decommissioning cost updates?
 (14) May Mr. Clark represent an employer in an APSC general rate case proceeding if an APSC General Staff investigation (but not a formally docketed APSC proceeding) of the subject utility's earnings was pending while Mr. Clark was employed by the APSC?
 (15) May Mr. Clark represent an employer in an APSC general rate case proceeding if an APSC General Staff investigation of the subject utility's earnings was not pending while Mr. Clark was employed by the APSC?
 (16) Under what circumstances may Mr. Clark represent an employer in an APSC general rate case proceeding?
 (17) May Mr. Clark represent an employer in future APSC proceedings on gas purchasing and pipeline contracting practices if an APSC General Staff investigation (but not a formally docketed APSC proceeding) of the subject utility's practices was pending while Mr. Clark was employed by the APSC?
 (18) May Mr. Clark represent an employer in future APSC proceedings on gas purchasing and pipeline contracting practices if an APSC General Staff investigation of the subject utility's practices was not pending while Mr. Clark was employed by the APSC?
 (19) Under what circumstances may Mr. Clark represent an employer in future APSC proceedings on gas purchasing and pipeline contracting practices?
(20) May Mr. Clark represent an employer in the FERC NOPR
 (21) For each of the above-referenced matters for which you find that A.C.A. § 19-11-709 restricts Mr. Clark's representation of an employer, please opine on the constitutionality of A.C.A. § 19-11-709 as applied to Mr. Clark regarding that matter.
RESPONSE
As an initial matter, I must note that an answer to many of the questions you have presented would require that factual determinations be made. As explained in response to those questions, the Attorney General cannot make factual determinations. Accordingly, my ability to respond to your questions in a conclusive or definitive manner is limited. I also note, however, that the Director of the Department of Finance and Administration is empowered to issue advisory opinions to "employees or contractors . . . regarding the appropriateness of conduct to be followed in proposed transactions." A.C.A. § 19-11-715(b). The Director is also required to promulgate regulations to implement the set of statutes that are the subject of your concern. A19-11-715(a). The factual questions you have raised seem to be within the authority of the Director to address, pursuant to A.C.A. § 19-11-715(b). In addition, it would be advisable to consult any applicable regulations that the Director may have promulgated concerning these matters.
To the extent that your questions raise purely legal issues, I will proceed to respond.
Question 1 — Does A.C.A. § 19-11-709 apply to former state employeesoutside the procurement context?
It is my opinion that A.C.A. § 19-11-709(b) does apply to former state employees outside the procurement context.
A.C.A. § 19-11-709(b) states:
19-11-709. Restrictions on employment of present and former employees.
 (b) RESTRICTIONS ON FORMER EMPLOYEES IN MATTERS CONNECTED WITH THEIR FORMER DUTIES.
 (1) PERMANENT DISQUALIFICATION OF FORMER EMPLOYEE PERSONALLY INVOLVED IN A PARTICULAR MATTER. It shall be a breach of ethical standards for any former employee knowingly to act as a principal or as an agent for anyone other than the state in connection with any:
 (A) Judicial or other proceeding, application, request for a ruling, or other determination;
(B) Contract;
(C) Claim; or
 (D) Charge or controversy in which the employee participated personally and substantially through decision, approval, disapproval, recommendation, rendering of advice, investigation, or otherwise while an employee, where the state is a party or has a direct and substantial interest.
 (2) ONE-YEAR REPRESENTATION RESTRICTION REGARDING MATTERS FOR WHICH A FORMER EMPLOYEE WAS OFFICIALLY RESPONSIBLE. It shall be a breach of ethical standards for any former employee, within one (1) year after cessation of the former employee's official responsibility in connection with any:
 (A) Judicial or other proceeding, application, request for a ruling, or other determination;
(B) Contract;
(C) Claim; or
 (D) Charge or controversy knowingly to act as a principal or as an agent for anyone other than the state in matters which were within the former employee's official responsibility, where the state is a party or has a direct or substantial interest.
A.C.A. § 19-11-709(b).
The above-quoted statutory language unambiguously extends to matters outside the procurement context. It explicitly applies to matters involving "any" "judicial or other proceeding, application, request for a ruling, or other determination, contract, claim, or charge or controversy in which the employee participated personally and substantially through decision, approval, disapproval, recommendation, rendering of advice, investigation, or otherwise while an employee, where the state is a party or has a direct and substantial interest." This description of the scope of the statute is clearly broad enough to include matters outside the context of procurement. The Arkansas Supreme Court consistently holds that statutory language should be interpreted just as it reads, with the words being given their commonly accepted meanings in ordinary usage.See, e.g., Weiss v. Chem-Fab Corp., 336 Ark. 21, ___ S.W.2d ___ (1999). When I apply this standard of statutory interpretation to the language of A.C.A. § 19-11-709(b), I must conclude that the statute applies to former state employees outside the context of procurement.
Question 2 — Are contested matters outside Mr. Clark's "officialresponsibility," as that phrase is used in A.C.A. § 19-11-709(b)(2), ifMr. Clark was not personally and substantially involved and if he had noapparent authority to direct state action on such matters?
I cannot opine definitively in response to this question, because I cannot make factual determinations concerning the "contested matters" to which you have referred. I have no specific information about such matters and cannot make a general blanket determination as to whether all such matters are outside Mr. Clark's "official responsibility." Each such matter must be analyzed upon the basis of its own particular facts.
Nevertheless, I will set forth the standard that will be applied in analyzing each such matter, upon the basis of which you can assess each situation and make a determination.
The phrase "official responsibility," as used in A.C.A. § 19-11-709, is defined in an earlier section of that set of statutes (all of which were enacted as a part of Act 483 of 1979). The definition of "official responsibility" states:
 (12) "Official responsibility" means direct administrative or operating authority, whether intermediate or final, either exercisable alone or with others, either personally or through subordinates, to approve, disapprove, or otherwise direct state action;
A.C.A. § 19-11-701(12).
In order to determine whether Mr. Clark had "official responsibility" for any particular matter, it will be necessary to examine and analyze his specific involvement in terms of whether he had any operating authority to approve, disapprove, or otherwise direct state action with regard to that matter — whether that authority was intermediate or final, and whether he could exercise that authority alone or with others, or personally or through subordinates. These are the factors that will determine the issue. If it can be established as a factual matter that Mr. Clark had no authority whatsoever to direct state action in connection with a particular matter, it could be concluded that that matter was outside his official responsibility.
Question 3 — May Mr. Clark represent an employer in future annual EAIearnings reviews filed in the ongoing docket?
Question 4 — May Mr. Clark represent an employer in future annual EAIGrand Gulf Rider update filings?
Question 5 — May Mr. Clark represent an employer in the FERC proceedingon Entergy's Transco proposal?
Question 6 — May Mr. Clark represent an employer in any APSC proceedingon EAI's Transco proposal?
Question 7 — May Mr. Clark represent an employer in an APSC proceeding onthe reasonableness of a utility's fuel costs if an APSC General Staffinvestigation (but not a formally docketed APSC proceeding) of thatutility's fuel costs was pending while Mr. Clark was employed by theAPSC?
Question 8 — May Mr. Clark represent an employer in an APSC proceeding onthe reasonableness of a utility's fuel costs if an APSC General Staffinvestigation of that utility's fuel costs was not pending while Mr.Clark was employed by the APSC?
Question 9 — Under what circumstances may Mr. Clark represent an employerin an APSC proceeding on the reasonableness of a utility's fuel costs?
Question 10 — May Mr. Clark represent an employer in future APSCproceedings to determine whether a proposed special contract is in thepublic interest?
Question 11 — May Mr. Clark represent an employer in APSC proceedingsthat will be necessary to implement the provisions on electricrestructuring resulting from the passage of Act 1556 of 1999 when Mr.Clark was never officially responsible for nor did he participatepersonally and substantially on behalf of the APSC in the process thatultimately resulted in that Act?
Question 12 — May Mr. Clark represent an employer in APSC proceedings onthe annual ANO decommissioning cost updates?
Question 13 — May Mr. Clark represent an employer in APSC proceedings onthe five-year ANO decommissioning cost updates?
Question 14 — May Mr. Clark represent an employer in an APSC general ratecase proceeding if an APSC General Staff investigation (but not aformally docketed APSC proceeding) of the subject utility's earnings waspending while Mr. Clark was employed by the APSC?
Question 15 — May Mr. Clark represent an employer in an APSC general ratecase proceeding if an APSC General Staff investigation of the subjectutility's earnings was not pending while Mr. Clark was employed by theAPSC?
Question 16 — Under what circumstances may Mr. Clark represent anemployer in an APSC general rate case proceeding?
Question 17 — May Mr. Clark represent an employer in future APSCproceedings on gas purchasing and pipeline contracting practices if anAPSC General Staff investigation (but not a formally docketed APSCproceeding) of the subject utility's practices was pending while Mr. Clarkwas employed by the APSC?
Question 18 — May Mr. Clark represent an employer in future APSCproceedings on gas purchasing and pipeline contracting practices if anAPSC General Staff investigation of the subject utility's practices wasnot pending while Mr. Clark was employed by the APSC?
Question 19 — Under what circumstances may Mr. Clark represent anemployer in future APSC proceedings on gas purchasing and pipelinecontracting practices?
Question 20 — May Mr. Clark represent an employer in the FERC NOPR?
I cannot opine definitively in response to Questions 3 through 20, all of which inquire about Mr. Clark's involvement in particular types of cases. All of these questions are purely factual ones that will turn on the specifics of the particular type of case involved. That is, a definitive answer to each of these questions will require that certain factual determinations about each case be made. More specifically, it will be necessary to know more specific factual information about Mr. Clark's involvement in the various types of cases about which you have inquired. Because the definition of "official responsibility," as used in the applicable statute (A.C.A. § 19-11-709), forbids former employees from being involved in cases even where their previous authority was only indirect and intermediate, substantial disputes could arise as to Mr. Clark's actual level of involvement. Accordingly, the facts as to the level of his involvement must be fully developed and determined, with the definition of "official responsibility," as stated in A.C.A. §19-11-701(12), being used as a guideline.
In addition, the cases that involve ongoing dockets and annual or periodic filings will require factual determinations concerning the extent to which previous filings and information, as well as the previous position of the APSC Staff, might be utilized in connection with the review and determinations that are made in current filings. Such factual determinations will impact directly on an ultimate determination as to Mr. Clark's involvement in these cases.
As previously mentioned, the Attorney General is not authorized to engage in the factual development and determinations described above. Accordingly, I must decline to respond to Questions 3 through 20. Nevertheless, I will reiterate that the language of A.C.A. § 19-11-709 is rather broad in its prohibitions. That is, the statute seems to be worded broadly enough to prohibit former state employees from becoming involved in cases even where the former state employee had the most tenuous of connections with the case. Therefore, even if Mr. Clark's involvement as a state employee with a particular type of case was minimal, it could nevertheless give rise to questions about the propriety of his representing a non-state employer in that type of case before the APSC. I would therefore advise caution in accepting such representation. Again, the decision should be guided by the express language of A.C.A. §19-11-709 and by the definition of "official responsibility," as stated in A.C.A. § 19-11-701(12).
I reiterate that it would be appropriate for you to present these factual questions to the Director of the Department of Finance and Administration for his advisory opinion, under the authority of A.C.A. § 19-11-715(b), and to consult any regulations that have been promulgated by the Director, pursuant to A.C.A. § 19-11-715(a). I also note that a person who has complied with an advisory opinion issued under A.C.A. §19-11-715(b) is deemed to have complied with the requirements of the subchapter. A.C.A. § 19-11-715(b).
Question 21 — For each of the above-referenced matters for which you findthat A.C.A. § 19-11-709 restricts Mr. Clark's representation of anemployer, please opine on the constitutionality of A.C.A. § 19-11-709 asapplied to Mr. Clark regarding that matter.
Because I have not opined definitively in response to the above-referenced matters, this question is moot.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh