Richard A. WEISS, Director, Department of Finance and Administration *v.* CHEM-FAB CORPORATION

98-82                                                            984 S.W.2d 395

Supreme Court of Arkansas
Opinion delivered January 7, 1999

*Malcolm P. Bobo*, for appellant.

*Walter Skelton*, for appellee.

Annabelle Clinton Imber, Justice. This is a case of first impression that involves the interpretation of the Arkansas Gross Receipts Act of 1941, as amended. The chancellor ruled that Chem-Fab Corporation's initial and replacement purchases of certain chemicals used in manufacturing aircraft parts were exempt from the Arkansas Gross Receipts Tax. We affirm in part and reverse in part.

The taxpayer, Chem-Fab Corporation, is a Hot Springs manufacturer of aluminum and titanium aircraft parts. These parts have unique shapes and contours and cannot be made with traditional machinery. Rather, a chemical milling process that uses several different chemicals shapes and forms the aircraft parts.

Annealing chemicals physically alter the metal's grain structure in order to bend and form the parts. These annealing chemicals do not require replacement because their useful life is indefinite. A chemical etching bath mills away excess metal through direct chemical action in order to form the requisite intricate contouring. Fifty percent of the chemical etching bath used to mill aluminum parts must be replaced, while the entire chemical etching bath used on titanium parts is discarded and replaced. These replacements occur every seven to ten days at a cost of roughly $12,000.00 for each replacement. Finally, two different chemicals are sprayed on the aircraft parts in order to check for the presence of cracks. These testing chemicals are completely consumed during this process and, thus, require replacement after each use.

On October 19, 1994, and August 25, 1995, Chem-Fab requested a refund from the Department of Finance and Administration (DF&A) for sales and use taxes paid on these chemicals, claiming they were machinery or equipment used directly in manufacturing and were exempt from taxation under Ark. Code Ann. § 26-52-402 and Arkansas Gross Receipts Tax Regulation GR-55. This request was denied by DF&A. Chem-Fab then brought suit in the Garland County Chancery Court for a refund of $13,823.59 plus interest. There was no dispute that Chem-Fab is a manufacturer. Nor was there any dispute that the annealing, etching, and testing chemicals were essential to and used directly in the manufacturing process. The chancellor ruled that these chemicals were equipment as that term is used in Ark. Code Ann. § 26-52-402 and that Chem-Fab was entitled to an exemption from the Arkansas Gross Receipts Tax for its initial purchases of those chemicals. While the chancellor found that replacement purchases of annealing chemicals were not exempt due to their infinite useful life, he concluded that Chem-Fab's weekly purchases of etching and testing chemicals were exempt under Ark. Code Ann. § 26-52-402(a)(2)(A) and 26-52-402(a)(2)](B) as purchases of replacement equipment, reasoning that the replacement chemicals performed more efficiently than the old, saturated chemicals they replaced. Finally, the chancellor found that the replacement of fifty percent of the old etching chemicals with new

etching chemicals qualified as a "substantial" replacement. DF&A now appeals the chancellor's findings and conclusions.

■ ■ We review tax-exemption cases *de novo* on appeal and do not set aside the findings of the chancellor unless they are clearly erroneous. *Aluminum Co. of America v. Weiss*, 329 Ark. 225, 946 S.W.2d 695 (1997); *Martin v. Riverside Furniture Corp.*, 292 Ark. 399, 730 S.W.2d 483 (1987). There is a presumption in favor of the taxing power of the state, and all tax-exemption provisions must be strictly construed against the exemption. *Aluminum Co. of America, supra.* The claimant has the burden of establishing the right to an exemption beyond a reasonable doubt and "to doubt is to deny [the exemption]." *Aluminum Co. of America, supra; Pledgor v. Baldor Int'l., Inc.*, 309 Ark. 30, 827 S.W.2d 646 (1992).

*Chemicals as Equipment Under Ark. Code Ann. § 26-52-402*

Arkansas Code Annotated § 26-52-402(a)(1) provides an exemption for equipment and machinery used to create or expand processing or manufacturing plants. In relevant part, the section provides:

> (a) There is specifically exempted from the tax imposed by this act, the following:

> (1)(A) Gross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas . . . but only to the extent that the machinery and equipment is purchased and used for the purposes set forth in this subdivision . . . .

> (B) The machinery and equipment will be exempt under this subdivision if it is purchased and used to create new manufacturing or processing plants or facilities within this state or to expand existing manufacturing or processing plants or facilities within this state . . . .

Chem-Fab asserts that the chemicals it uses to manufacture aircraft parts are "equipment" as that term is used in the above provision

and are thus exempt from taxation. We agree and affirm the chancellor's holding on this issue.

Equipment is an exceedingly elastic term, the meaning of which should be determined from context. *Pledger v. C.B. Form Co.*, 316 Ark. 22, 871 S.W.2d 333 (1994); *Ragland v. Dumas*, 292 Ark. 515, 732 S.W.2d 119 (1987). In *Dumas, supra,* we stated that the term equipment as used in this particular statute means "implements, tools or devices of some degree of complexity and continuing utility." Although neither party refers to this definition in their briefs, we shall adhere to the definition of equipment adopted in *Dumas.* Consequently, any item falling within that definition will be considered "equipment" for purposes of qualifying for the exemption found in Ark. Code Ann. § 26-52-402(a)(1)(A).

Our first inquiry under *Dumas* must be to determine whether the chemicals here constitute "implements, tools or devices of some degree of complexity." An "implement" is "an article serving to equip; a device used in the performance of a task; one that serves as an instrument or tool." *Merriam Webster's Collegiate Dictionary*, 583 (10th ed. 1997). The chemicals used by Chem-Fab in their manufacturing process clearly meet the definition of "implement" because they serve as instruments or tools to soften metal or to mill away excess metal. Further, these chemicals are by their very nature complex substances. We thus conclude that the chemicals here constitute "implements, tools, or devices of some degree of complexity."

Turning to the second inquiry under *Dumas,* we must also determine whether the chemicals used by Chem-Fab possess continuing utility. In *Dumas,* we found that gravel used for site preparation and road construction was not equipment because it became fully integrated into a temporary road, the utility of which ended upon the termination of each individual oil-extraction project. *See Dumas, supra.* By contrast, the chemicals here are not fully integrated into some other object, the utility of which is confined to an individual project. Rather, these chemicals are used directly in the process of manufacturing a number of aircraft parts and, thus, have continuing utility.

■ ■    For the above reasons, we conclude that the chemicals used by Chem-Fab in its manufacturing process come within the definition of equipment as that term is used in Ark. Code Ann. § 26-52-402. This conclusion is also supported by DF&A's definition of equipment in Tax Regulation GR-55: "tangible personal property other than machinery which is directly used in the manufacturing process." Agency interpretations of a statute, while not conclusive, are highly persuasive. *Aluminum Co. of America, supra.* These chemicals clearly qualify as equipment according to DF&A's own definition of that term. Thus, we affirm the trial court's holding that Chem-Fab proved beyond a reasonable doubt that its chemicals were equipment and that Chem-Fab was entitled to an exemption from the Arkansas Gross Receipts Tax for its initial purchases of those chemicals.

*Replacement Purchases of Chemicals Under Ark. Code Ann.*
*§ 26-52-402*

■    DF&A's second point on appeal is that Chem-Fab's replacement purchases of chemicals are taxable purchases which are not exempt under Ark. Code Ann. § 26-52-402(a)(2)(A). That section provides:

> (2)(A) Machinery purchased to replace existing machinery and used directly in producing, manufacturing, fabricating, assembling, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in this state will be exempt under this subdivision. . . .

The next section of the statute articulates two requirements which must be met before replacement purchases of machinery and equipment qualify for an exemption. More specifically, it provides that:

> (B)(i) "Machinery purchased to replace existing machinery" means that substantially all of the machinery and equipment required to perform an essential function is physically replaced with new machinery that performs the essential function more efficiently or with a longer useful life than the old machinery being replaced. . . .

Thus, replacement machinery or equipment must: (1) be a substantial replacement; and (2) must either be more efficient or have a longer useful life than the equipment replaced.

DF&A contends that the chancellor erred when he found that the replacement chemicals were exempt because they worked more efficiently than the old, saturated chemicals at the time of replacement. According to DF&A, the efficiency of the chemicals being replaced should be determined at the time those chemicals were originally purchased and not at the time of replacement.

At the outset, it should be noted that Ark. Code Ann. § 26-52-402(a)(2)(B) does not specify a particular point in time when the efficiency or useful life of new equipment should be compared to that of old equipment, i.e., whether to compare the old and new equipment at the time of replacement or at the time of purchase. Chem-Fab argues that the comparison must be made at the time the old equipment is replaced in order to be consistent with the intent of the General Assembly set forth in Ark. Code Ann. § 26-52-402(a)(2)(C):

> (2)(C) It is the intent of subsection (a)(2) of this section to provide the foregoing exemptions as incentives to encourage . . . the modernization of existing manufacturing plants in Arkansas through the replacement of old, inefficient, or technologically obsolete machinery and equipment . . . .

DF&A, on the other hand, asserts that replacement equipment must be compared with old equipment as of the time each was purchased. To do otherwise, that is, to make the comparison at the time of replacement, would result in a broad exemption for all replacement equipment. DF&A further asserts that the statutory provision requiring more efficiency or a longer useful life would be rendered meaningless under the interpretation suggested by Chem-Fab, because new equipment is always more efficient or longer lasting than old equipment when the comparison is made at the time of replacement.

Under our well-settled rules of statutory construction, tax-exemption provisions must be strictly construed and if there is any doubt concerning their application, the exemption must be denied. *Aluminum Co. of America, supra.* In this case, Chem-Fab

and DF&A each urge a different statutory interpretation. Although both statutory interpretations are reasonable, doubt remains as to which interpretation is correct. Under these circumstances, we must deny the exemption, because "to doubt is to deny." *Id.* Thus, we agree with DF&A's determination that Chem-Fab failed to establish its entitlement to the exemption for replacement chemicals beyond a reasonable doubt, and because a tax-exemption provision must be construed against the exemption, we reverse the chancellor's ruling that Chem-Fab was entitled to the exemption.

Affirmed in part and reversed in part.

CORBIN and THORNTON, JJ., concur in part and dissent in part.

SMITH, J., not participating.

RAY THORNTON, Justice, concurring in part and dissenting in part. I agree with the majority that the statutory exemption from sales and use taxes set out in Ark. Code Ann. § 26-52-402 for equipment used directly in the manufacture of articles of commerce at plants in the State of Arkansas is applicable to chemicals used for milling, shaping, and finishing such products. However, I cannot agree with the majority's conclusion that the replacement of such equipment is not exempt from sales and use taxes, and respectfully dissent from that holding.

The majority is clearly correct when it interprets the exemption statute as applying to chemicals used in the manufacturing process. That intent is expressed in Ark. Code Ann. § 26-52-402(c)(2) which states:

> (A) Machinery and equipment used in actual production includes machinery and equipment that meet all other applicable requirements and which cause a recognizable and measurable mechanical, chemical, electrical, or electronic action to take place as a necessary and integral part of manufacturing, the absence of which would cause the manufacturing operation to cease.

Ark. Code Ann. § 26-52-402(c)(2)(A) (Repl. 1997).

All parties agree that without the chemical equipment used by Chem-Fab in this manufacturing plant, the production of these aircraft parts would cease. If any further statutory citation is needed to complete the clear and unambiguous legislative definition of chemicals as part of the equipment used in the manufacture of a finished article of commerce, reference to the language used by the General Assembly in listing specific exclusions from taxation is useful. Some of these exclusions are set out in Ark. Code Ann. § 26-52-402(c)(2) as follows:

> (B) Machinery and equipment "used directly" in the manufacturing process shall include, but shall not be limited to, the following:
>
> (iv) Machinery and equipment that produce steam, electricity, or chemical catalysts and solutions that are essential to the manufacturing process but which are consumed during the course of the manufacturing process and do not become necessary and integral parts of the finished product.

Ark. Code Ann. § 26-52-402(c)(2)(B) (Repl. 1997).

This statutory language is a clear and unambiguous instruction that chemical catalysts and solutions that are essential to the manufacturing process should be excluded from sales and use taxes. In my view, the statute also suggests that when chemical catalysts and solutions essential to the manufacturing process are depleted, replacement of such chemical equipment should also be excluded from sales and use taxes.

Our rules of statutory interpretation are clear. In interpreting a statute, we will give the words in the statute their ordinary and common usage. *Burcham v. City of Van Buren*, 330 Ark. 451, 455, 954 S.W.2d 266, (1997). Additionally, in construing any statute, we will place the statute beside other statutes relevant to the subject matter in question, giving it meaning and effect derived from the combined whole. *Vanderpool v. Fidelity & Cas. Ins. Co.*, 327 Ark. 407, 415, 939 S.W.2d 280, (1997).

With reference to the replacement of equipment excluded from sales and use taxes, Ark. Code. Ann. § 26-52-402 provides in pertinent part the following:

(a)     There is specifically exempted from the tax imposed by this act, the following:

(1)(A) Gross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas, . . .

(2)(A) *Machinery purchased to replace existing machinery* and used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in this state will be exempt under this subdivision;

(B)(i) "Machinery purchased to replace existing machinery" means that substantially all of the machinery and equipment required to perform an essential function is physically *replaced with new machinery that performs the essential function more efficiently or with a longer useful life than the old machinery being replaced.*

Ark. Code. Ann. § 26-52-402 (Repl. 1997)(emphasis supplied).

In my view, the plain and unambiguous words used in the statute providing an exemption for replacement of existing machinery and equipment were chosen by the legislature to carry out and accomplish the legislative intent of encouraging the manufacture of articles of commerce within the State of Arkansas. The legislature declared that the State would not impose sales or use taxes upon equipment, or replacement equipment, that is essential to, and directly a part of the manufacturing process. The exemption from taxes was broad enough to include many enterprises and occupations which encourage economic development. We are told that "mining, quarrying, refining, extracting oil and gas, cotton ginning, the drying of rice, soybeans, and other grains and the manufacturing of feed, the processing of poultry or eggs and livestock and the hatching of poultry, and printing of all kinds, types, and characters, including the services of overprinting, and photographic processing incidental to printing," together with retreading of tires for resale, all qualify for this tax exemption. *See* Ark. Code Ann. § 26-52-402(b). With respect to new and

replacement equipment used in agricultural production, Ark. Code Ann. § 26-52-403 provides in pertinent part:

> (a) The sale of new *and used* farm equipment and machinery shall not be subject to the Arkansas gross receipts tax . . . but shall be exempt therefrom.

Ark. Code Ann. § 26-52-403 (Repl. 1997)(emphasis supplied).

It seems clear that the legislative intent was to encourage manufacturing, agriculture, and economic development by providing exemptions from sales and use taxes on new or replacement machinery or equipment used for those purposes. Rather than addressing the question of taxation of replacement equipment, the Department's principal argument was that chemicals used in this process should not be considered as *equipment* that is qualified for the tax exemption.

When the trial court concluded that the chemicals were manufacturing equipment, the Department then argued that they were not substantially replaced. The majority opinion correctly recognizes that the chemicals are replacement equipment for the old chemical solutions which have, through use, lost their efficacy, and no longer will support the manufacturing process. However, the majority then reasons that the new tool is no better than the old tool was at the time it was new, and therefore is not exempted. I do not believe that is a correct interpretation of the statute.

I believe the statutory intent to provide an exemption for new replacement equipment that replaces old and worn-out manufacturing equipment is plain and unambiguous. If, as the majority concludes, that intent is not plain and unambiguous, the record before us does not answer a question which is essential to determination of legislative intent: we are not informed as to how the agency has answered the question whether other new equipment that replaces old, worn-out equipment, would be eligible for a tax exemption. We were told in oral argument by the appellee that the Department's policy has always been: "If you have a 100 horsepower machine that has to be replaced and it has been used ten years . . . that is a replacement and I believe that it [the tax exemption] has always been allowed. [The statute] just says 'perform the essential function more efficiently.'"

In the event the statute is considered ambiguous, certainly this matter should be remanded for a determination by the trial court of the Revenue Department's rules, regulations, and practices for granting tax exemptions for replacement equipment. The agency's own interpretations of this provision, while not binding upon the court, would instruct us as to whether the Department's argument in this case is a novel approach flying in the face of other agency actions.

I note that the interpretation of the rule announced by the majority contradicts the rule applied to agricultural equipment. Administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies. *Wacaser v. Insurance Comm'r.*, 321 Ark. 143, 146, 900 S.W.2d 191 (1995). We should not adopt an interpretation of the statute that the Revenue Department itself has not accepted and adopted without first considering the rationale for its actions.

It seems clear to me that a plain-language reading of the statute would require the conclusion that a replacement would be eligible for the exemption since the new machinery would clearly have a longer useful life than the old machinery being replaced. The majority interprets the meaning of the words used in the statute without a showing that the interpretation arrived at by the majority has ever been used by the Department.

I believe that when a chemical etching and milling compound has been worn out and has become inefficient for the manufacturing process, its replacement with a new chemical etching and milling compound is both more efficient and has a longer useful life than the worn-out equipment being replaced. For these reasons I cannot agree with the majority's conclusion that even though the original chemical equipment was eligible for an exemption, the exemption is not available to replacement of that equipment.

I respectfully dissent from the majority opinion and express the hope that the General Assembly will address the issue promptly, and before the consequences of this decision result in the loss of manufacturing enterprises from this state.

CORBIN, J., joins.