2009 Ark. 412

**Richard WEISS, Director of the Arkansas Department of Finance and Administration, Appellant,**

v.

**BRYCE CO., LLC, Appellee.**

No. 09–225.

Supreme Court of Arkansas.

Sept. 17, 2009.

Revenue Legal Counsel, by: Paul M. Gehring, Little Rock, for appellant.

Womack, Landis, Phelps & McNeill, by: Mark Mayfield, Jonesboro, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This appeal arises out of a tax audit performed by the appellant, the Arkansas Department of Finance and Administration (DF & A), on the appellee, Bryce Company, LLC (Bryce). Bryce is a company located in Searcy that produces flexible packaging for food products. The issue in this case is whether one of the items used by Bryce during its printing process constitutes "equipment" exempt from taxation pursuant to Arkansas Code Annotated section 26–52–402 (Supp.2005) and Arkansas Gross Receipts Tax Rule GR–55.

DF & A conducted an audit of Bryce over two periods: from July 2003 to February 2004, and from March 2004 to April 2006. As a result of the audit, DF & A determined that Bryce owed state and local taxing authorities $99,660.20. DF & A

disallowed Bryce's claim that its purchases of "stickyback tape" were exempt from gross-receipts taxes. In addition, DF & A denied Bryce's request for a refund of certain gross-receipts taxes it had already paid on purchases of stickyback tape.

Bryce protested the assessment of the taxes and the denial of its request for refund on September 22, 2006. DF & A held a hearing on Bryce's protest on September 6, 2007, and subsequently issued an administrative decision finding that the stickyback tape was taxable under Arkansas's Gross Receipts Act. Ark.Code Ann. §§ 26–52–101 to –914 (Supp.2005). Bryce then filed a complaint in White County Circuit Court on August 26, 2008, seeking a determination from the court that the stickyback tape was exempt from gross-receipts taxes and an order directing DF & A to refund the amount of taxes paid.

After a bench trial on September 22, 2008, the circuit court entered an order on October 7, 2008, finding that the stickyback tape "has the same status as the die plate."[1] DF & A filed a motion for more specific findings of fact and conclusions of law, arguing that the order did not provide enough detail for appellate review and that it was ambiguous in its reference to a "die plate," because neither party argued that the stickyback tape was exempt under GR–56 of DF & A's Gross Receipts Tax Rules. (*See* N.1, *supra*.) The circuit court subsequently entered findings of fact and conclusions of law on November 19, 2008, specifically finding that the stickyback tape met the definition of "equipment" found in Arkansas Code Annotated

section 26–52–402 and in GR–55 of the Gross Receipts Tax Rules and was thus exempt from taxation under the Gross Receipts Act. DF & A filed a timely notice of appeal on December 15, 2008, and now argues, as its sole point on appeal, that the circuit court erred in finding that the stickyback tape satisfies the manufacturing machinery and equipment exemption of section 26–52–402 and Arkansas Gross Receipts Tax Rule 55.

■ Tax exemption cases are reviewed de novo on appeal, and the findings of fact of the trial court are not set aside unless they are clearly erroneous. *Weiss v. Chem–Fab Corp.*, 336 Ark. 21, 984 S.W.2d 395 (1999) (citing *Aluminum Co. of Am. v. Weiss*, 329 Ark. 225, 946 S.W.2d 695 (1997)). This court has also held that "[t]here is a presumption in favor of the taxing power of the state, and all tax-exemption provisions must be strictly construed against the exemption." *Chem–Fab*, 336 Ark. at 25, 984 S.W.2d at 397. This court has frequently reiterated the phrase "to doubt is to deny the exemption." *Eg.*, *Citifinancial Retail Servs. v. Weiss*, 372 Ark. 128, 133, 271 S.W.3d 494, 498 (2008); *Pledger v. C.B. Form Co.*, 316 Ark. 22, 25, 871 S.W.2d 333, 334 (1994); *Pledger v. Baldor Int'l*, 309 Ark. 30, 33, 827 S.W.2d 646, 648 (1992). Further, this court has declared in the past that a taxpayer must establish an entitlement to an exemption from taxation "beyond a reasonable doubt." *Rineco Chem. Indus. v. Weiss*, 344 Ark. 118, 40 S.W.3d 257 (2001); *Leathers v. Warmack, supra; Pledger v. Baldor, supra.*[2]

---

1. Section 56 DF & A's Gross Receipts Tax Rules specifically exempts dies and molds from gross receipts taxes under certain circumstances. *See also* Ark.Code Ann. § 26–52–402(c)(2)(B)(i) (Repl.2008).

2. The genesis of the rule that tax exemptions have to be established beyond a "reasonable

doubt" appears to be in cases such as *Wiseman v. Madison Cadillac Co.*, 191 Ark. 1021, 88 S.W.2d 1007 (1935), and *McCarroll v. Mitchell*, 198 Ark. 435, 129 S.W.2d 611 (1939). Each of these cases quoted the Fourth Edition of 2 *Cooley on Taxation* as stating that "[e]xemptions are never pre-

In April of 2009, however, the General Assembly amended this beyond-a-reasonable-doubt burden. Act 755 of 2009 amended the tax-procedures statutes and declared that "[t]he standard of proof for the taxpayer to establish facts to support a claim for an exemption, deduction, or credit is clear and convincing evidence." Ark. Code Ann. § 26–18–313 (Supp.2009).[3] DF & A argues that this new standard of review should not be given retroactive application to the instant case because the tax assessments and refund claims were for periods prior to the effective date of Act 755 and, without an express legislative intention to the contrary, prospective application is presumed. Bryce, on the other hand, argues that the statute should be given retroactive application because it was clearly intended to be remedial or procedural, and such enactments are not within the presumption against retroactive application. However, as discussed below, we conclude that Bryce's proof satisfied either burden, and it is therefore unnecessary for us to determine whether the statute should be applied retroactively in this case.

Turning to the merits of the appeal, DF & A argues that the circuit court erred in finding that the stickyback tape used by Bryce satisfied the "machinery or equipment" exemption under section 26–52–402 or Arkansas Gross Receipts Tax Rule 55. Under Arkansas's tax laws, a gross-receipts or sales tax is levied on all sales to any person of tangible personal property. Ark.Code Ann. § 26–52–301(a) (Repl.2008). However, section 26–52–402(a)(1)(A) exempts

> Gross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas[.]

Section 26–52–402 goes on to explain that the gross-receipts tax exemption is intended to apply "only [to] such machinery and equipment as shall be used directly in the actual manufacturing or processing operation at any time from the initial stage when actual manufacturing or processing begins through the completion of

---

sumed, the burden is on a claimant to establish his right to exemption, and *an alleged grant of exemption* will be strictly construed, and cannot be made out by inference or implication, but must be beyond reasonable doubt." *Wiseman*, 191 Ark. at 1029, 88 S.W.2d at 1011; *McCarroll*, 198 Ark. at 441, 129 S.W.2d at 614 (emphasis added). These early cases do not appear to speak about the burden of proof imposed on one who claims a tax exemption; rather, they state that the *legislative grant of exemption itself* must be set out in terms that are beyond reasonable doubt. A case from 1883, *St. Louis, I.M. & S. Railway v. Berry*, 41 Ark. 509 (1883), states that grants of immunity from taxation "should be so clear that there can be neither reasonable doubt nor controversy about [their] terms." Our later cases have apparently applied this principle more broadly than was originally intended, holding that *the tax-

*payer must prove the exemption* beyond a reasonable doubt. *See, e.g., Mann v. McCarroll*, 198 Ark. 628, 638, 130 S.W.2d 721, 726–27 (1939) (citing *McCarroll v. Mitchell, supra*, as holding that tax exemptions must be shown to exist "practically beyond a reasonable doubt").

3. The emergency clause of Act 755 stated that manufacturers and businesses had "found that it is substantially more difficult to prove they are entitled to a tax exemption, deduction, or credit in Arkansas than in most other states based on the court interpretation that the taxpayer must present facts that establish their right to a tax exemption ... 'beyond a reasonable doubt.' " § 3, 2009 Acts Ark. 755. Thus, with Act 755, the General Assembly appears to have intended to clarify the exact burden of proof in such cases.

the finished article of commerce and the packaging of the finished end product." Ark.Code Ann. § 26–52–402(c)(1)(A) (Repl. 2008). The word "directly" in the preceding subsection is "used to limit the exemption to only the machinery and equipment used in actual production during processing, fabricating, or assembling raw materials or semifinished materials into the form in which such personal property is to be sold in the commercial market." Ark.Code Ann. § 26–52–402(c)(1)(B) (Repl.2008). The General Assembly further qualified the phrase "used directly" as follows:

> Machinery and equipment used in actual production includes machinery and equipment that meet all other applicable requirements and which cause a recognizable and measurable mechanical, chemical, electrical, or electronic action to take place as a necessary and integral part of manufacturing, the absence of which would cause the manufacturing operation to cease.

Ark.Code Ann. § 26–52–402(c)(2)(A)(i) (Repl.2008).

Under Arkansas Code Annotated section 26–52–105(b) (Repl.2008), the Director of the Department of Finance and Administration is directed to promulgate rules and regulations for the proper enforcement of the Gross Receipts Act. Those rules and regulations encompass GR–55, which provides the following definitions:

F. DEFINITIONS.

1. "Machinery" means mechanical devices or combinations of mechanical powers and devices purchased or constructed by a taxpayer or his agent and used to perform some function and to produce a certain effect or result. Machinery includes electrical, mechanical, and electronic components which are a part of machinery and are necessary for the machine to produce its effect or result.

2. "Equipment" means any tangible personal property other than machinery as defined in GR 55(F)(1) of this rule used directly in the manufacturing process except those items specifically excluded from the exemption as provided in GF–55(B)(3).[4]

The circuit court below was asked to determine whether the stickyback tape met these definitions. At trial, Ronnie Britton, a tax auditor at DF & A, testified that he reviewed Bryce's purchase invoices and toured the company's plant in order to determine how the stickyback tape was utilized in the plant. Britton described the stickyback tape as being attached to a printing plate containing the picture that is to be printed on the packaging onto the printing sleeve. The packaging, sleeve, plate, and stickyback tape is run through a machine, and after the use of the tape is completed, it is discarded. Based on his observation that the tape was not used on an ongoing basis, Britton concluded that the stickyback tape was not exempt from Arkansas's sales tax.

Jimmy Swain, the site manager for Bryce, has worked for the company for nearly twenty years. He also testified at trial, explaining that Bryce provides flexile packaging for confectionary foods and that the stickyback tape is used in the printing process on that packaging. According to Swain, the stickyback is placed on a printing sleeve that fits onto a solid cylinder, and then a polymer printing plate is placed

---

4. GR–55(B)(3) excludes "hand tools, buildings, transportation equipment, office machines and equipment, machinery and equipment used in administrative, accounting, sales or other such activities of the business involved, or any and all other machinery and equipment not directly used in the manufacturing operation."

over the stickyback. Without the stickyback, the plate would not be held onto the sleeve. The plate is then what prints the image on the packaging.

Swain described the stickyback's function in the printing process as having a certain density or "durometer" to it, which allows it to serve as a cushion under the polymer printing plate and provides for a uniform print on the polypropylene snack bags. The images on those bags are built up of multiple dots imposed on top of each other. The stickyback is more adhesive on the sleeve side than on the plate side in order to allow for repositioning of the plate, if necessary. The bottom side of the stickyback is also channeled or crosshatched, which allows for air to escape from under the plate material, which allows the plate to lie flat and produce an even image. Swain explained that the "durometer," or softness, of the material is also important, because that softness allows the printing plate enough softness to adjust to any irregularities in the surface being printed. That softness, combined with the thickness of the stickyback (roughly twenty one-thousandths of an inch thick) also provides "enough forgiveness to be able to get a uniform printout across the web."

Swain acknowledged that, in time, a printing plate will wear out, although they would generally last up to one million linear feet. When a plate wears out, it is stripped from the stickyback, the stickyback is removed from the sleeve and discarded, and new stickyback is put on the sleeve along with a new plate. However, with some smaller jobs that had less frequent print runs, Swain said that Bryce could leave the plate and the stickyback in place on the sleeve and re-use it later.

As mentioned above, the circuit court determined that the stickyback tape fell within the statutory definition of "equipment" and was therefore exempt from sales tax. On appeal, DF & A argues that the stickyback tape does not satisfy either the statutory definitions or the interpretations given to the term by this court in the cases of *Weiss v. Chem–Fab Corp.*, 336 Ark. 21, 984 S.W.2d 395 (1999), or *Ragland v. Dumas*, 292 Ark. 515, 732 S.W.2d 118 (1987).

In *Ragland v. Dumas*, this court interpreted the word "equipment" in section 26–52–402. In that case, Eddie Dumas was a builder of temporary roads to oil-drilling sites, using gravel in the construction of those roads. After an audit, DF & A assessed more than $20,000 in sales taxes against Dumas. Dumas challenged DF & A's assessment of sales taxes, arguing that the gravel he used in his road-building activities should be exempt as machinery or equipment. *Id.* at 518, 732 S.W.2d at 119. The circuit court disagreed on this issue, concluding that the gravel was not used directly in the oil-processing operation. *Id.*

On appeal, this court considered whether the gravel furnished to build temporary roads could properly be called "equipment." The court noted that the word "has been referred to as an exceedingly elastic term, the meaning of which depends on context." *Id.* at 520, 732 S.W.2d at 120. The court noted that the context involved in that case was "whether a contractor's gravel furnished to build temporary roads can be viewed as equipment under § 84–1904(r),[5] used directly in the process of extracting oil." *Id.* The court concluded that it was

clear that the General Assembly, by the use of the terms machinery and equip-

---

**5.** This statutory provision is now Arkansas Code Annotated section 26–52–402(c).

ment, intended implements, tools or devices of some degree of complexity and continuing utility and not materials, such as gravel and crushed rock, that become fully integrated into a temporary road, the utility of which ends upon the termination of each oil-extraction project.

*Id.*

In a later case, *Weiss v. Chem–Fab Corp., supra,* DF & A challenged the trial court's determination that certain chemicals, used in milling airplane parts, constituted tax-exempt equipment. The chemicals in that case were applied to aluminum and titanium airplane parts to anneal the metals and etch away excess metals. Some of the chemicals could be reused, but most had to be discarded and replaced after being used. Other chemicals were sprayed on the airplane parts to check for cracks; these chemicals were completely consumed during the process and required replacement after each use. *Chem–Fab,* 336 Ark. at 24, 984 S.W.2d at 396–97. After Chem–Fab requested a refund for sales taxes paid on these chemicals and was denied by DF & A, Chem–Fab filed suit in Garland County Chancery Court. The chancellor found that the chemicals were equipment under section 26–52–402. *Id.*

On appeal, this court adhered to the definition of "equipment" set out in *Ragland,* stating that equipment "means 'implements, tools or devices of some degree of complexity and continuing utility.'" *Id.* at 26, 984 S.W.2d at 398. The court first considered whether the chemicals were "implements . . . of some degree of complexity" and concluded that they were because they both "serve[d] as instruments or tools to soften metal or to mill away excess metal" and were "by their very nature complex substances." *Id.*

The court also considered whether the chemicals possessed continuing utility.

The court contrasted the chemicals, which were not fully integrated into any other particular object and were used directly in the processing of a number of aircraft parts, with the gravel in *Ragland,* which became fully integrated into the temporary road and had no utility after each oil-extraction project was completed. *Id.* The court concluded that the chemicals therefore had "continuing utility," as well as the requisite degree of complexity. *Id.*

We conclude that the stickyback tape in the present case meets these case-law-based criteria as well as the regulatory definition of equipment and the simple statutory requirement that the alleged equipment be "used directly in the actual manufacturing or processing operation." § 26–52–402(c)(1)(A). As noted above, the word "equipment" is "an exceedingly elastic term, the meaning of which depends on context." *Ragland,* 292 Ark. at 520, 732 S.W.2d at 120.

Here, the tape possesses some degree of complexity, as described by site manager Swain, in that it is cross-hatched to permit proper airflow and of a specific thickness and softness to provide for even printing. A given segment of tape is used over as much as one million linear feet, and even though it must eventually be discarded, it can be—and sometimes is—retained and reused for smaller printing jobs. Finally, the statute declares that, for an item to be "used directly" in the manufacturing process, it must "cause a recognizable and measurable mechanical, chemical, electrical, or electronic action to take place as a necessary and integral part of manufacturing, the absence of which would cause the manufacturing operation to cease." § 26–52–402(c)(2)(A)(i). Without the stickyback tape, the mechanical process of printing the polyethylene packaging could not be accomplished. Accordingly, we conclude that the circuit court did not err in deter-

mining that the stickyback tape was equipment that was exempt from sales taxes.

Affirmed.