SLIP OPINION

Cite as 2015 Ark. 255

# SUPREME COURT OF ARKANSAS

No. CV-14-535

| | |
|---|---|
| LARRY W. WALTHER, IN HIS OFFICIAL CAPACITY AS DIRECTOR, ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION<br>APPELLANT | Opinion Delivered June 4, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV11-3290] |
| V.<br><br>WEATHERFORD ARTIFICIAL LIFT SYSTEMS, INC.<br>APPELLEE | HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Appellant, Larry W. Walther, in his official capacity as the Director of the Arkansas Department of Finance and Administration (ADFA), appeals from the order of the circuit court finding that "proppants" are "equipment" under Arkansas Code Annotated section 26-52-402 (Repl. 2014) and thus exempt from taxation. We affirm the circuit court's decision.

According to the circuit court's order, appellee Weatherford Artificial Lift Systems, Inc. (Weatherford) provided oil-field services that included hydraulic fracturing to the oil-and-gas production industry in Arkansas. The proppants, which according to the circuit court's order are granular substances used in extracting natural gas from unconventional natural-gas reservoirs such as the Fayetteville Shale in Arkansas, prevent rock fractures from closing when used in connection with the hydraulic fracturing of new natural-gas wells. ADFA conducted an excise-tax audit of Weatherford's purchases and sales for the period of October 1, 2006,

through July 31, 2009. ADFA's assessment included $1,347,096.66 in gross-receipts tax and interest. Weatherford paid the entire amount, including additional interest accrued, and then brought this lawsuit to recover the amount paid. A trial was held to determine whether the proppants were exempt from the gross-receipts tax.

The circuit court entered judgment in favor of Weatherford. The court concluded that the proppants used by Weatherford are exempt because they constitute equipment as defined by the statutes and ADFA's own rules. Further, the circuit court found that ADFA's Gross Receipts Tax Rule GR–57(E)(5), which characterized proppants as nonexempt, was invalid and unenforceable as applied in this case because it was contrary to applicable statutes and cases, lacked a rational basis, violated the separation-of-powers provision of the Arkansas Constitution, was arbitrary and capricious, and exceeded the regulatory authority of ADFA. The circuit court concluded that Weatherford was entitled to judgment in the amount of $1,356,440.60, with interest.

ADFA appeals. For its first point on appeal, ADFA maintains that proppants do not constitute equipment. In sum, ADFA argues that proppants are not equipment because they are not complex tools or devices, with continuing utility, that are used directly in the process of extracting oil and gas, and further, proppants do not cause a recognizable and measurable mechanical or chemical action to take place as a necessary and integral part of manufacturing, without which oil–and–gas production would cease. ADFA's second point on appeal is that the circuit court erred in finding that Arkansas Gross Receipts Tax Rule GR–57(E)(5), which characterized proppants as nonexempt, was invalid and unenforceable as applied to this case.

Under our statutes, exempt from taxation are "[g]ross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas[.]" Ark. Code Ann. § 26-52-402(a)(1)(A). "Manufacturing" specifically includes the extraction of oil and gas. Ark. Code Ann. § 26-52-402(b)(4). The statute exempts "only the machinery and equipment as shall be used directly in the actual manufacturing or processing operation at any time from the initial stage when actual manufacturing or processing begins through the completion of the finished article of commerce and the packaging of the finished end product." Ark. Code Ann. § 26-52-402(c)(1)(A). Further, the word "directly" is "used to limit the exemption to only the machinery and equipment used in actual production during processing, fabricating, or assembling raw materials or semifinished materials into the form in which such personal property is to be sold in the commercial market." Ark. Code Ann. § 26-52-402(c)(1)(B). The statute further defines the phrase "used directly," as "[m]achinery and equipment used in actual production," including "machinery and equipment that meet all other applicable requirements and which cause a recognizable and measurable mechanical, chemical, electrical, or electronic action to take place as a necessary and integral part of manufacturing, the absence of which would cause the manufacturing operation to cease." Ark. Code Ann. § 26-52-402(c)(2)(A)(i). This court has noted that the word "equipment" has been referred to as an exceedingly elastic term, the meaning of which depends on context, and has stated, "In sum, we believe it is clear that the General Assembly,

by the use of the terms machinery and equipment, intended implements, tools or devices of some degree of complexity and continuing utility." *Ragland v. Dumas*, 292 Ark. 515, 520, 732 S.W.2d 118, 120 (1987); *see also Weiss v. Chem-Fab Corp.*, 336 Ark. 21, 26, 984 S.W.2d 395, 397–98 (1999) (same).[1]

In its findings of fact, the circuit court concluded that the proppants at issue included silica-sand proppants, cured and uncured resin coated proppants, and ceramic proppants, and that all proppants were used in establishing new natural-gas wells in the Fayetteville Shale during the audit period. The circuit court further noted that these Fayetteville Shale wells were developed using modern horizontal-well and hydraulic-fracturing technologies that rely on the proppants in order for the wells to be productive.

The court stated that the proppants used by Weatherford were selected by it to conform to certain industry specifications and to meet the specific requirements of the type of reservoir involved. The circuit court further noted that hydraulic fracturing created fractures in the formation that surround the horizontal well bore, and that proppants are selected based on their ability to form proppant packs to hold the fractures open when the hydraulic-fracturing fluids are withdrawn and establish permanent channels through which natural gas flows from the unconventional natural-gas reservoir at the production site through the well bore to the surface. The court stated that proppants are necessary to extract the natural gas in the Fayetteville Shale using the horizontal-well and hydraulic-fracturing technology.

---

[1]In 2015, the statute was amended to provide that machinery and equipment "used directly" in the manufacturing process included "[s]and and other proppants used to complete a new oil or gas well or to re-complete, redrill, or expand an existing oil or gas well." 2015 Ark. Act 1125, § 1.

SLIP OPINION

The circuit court concluded that the proppants, which form proppant packs, are used directly to extract oil and gas in wells developed using horizontal–well and hydraulic–fracturing technologies and have a continuing utility and extended useful life that corresponds to the production life of each well. The circuit court also concluded that the proppants, which form proppant packs, cause a recognizable and measurable mechanical action in holding fractures open in order for the natural gas to flow from the unconventional reservoir to the surface. The court also found that the proppants are reactive to each other to the extent that they form proppant packs and therefore have an ancillary chemical action. The court noted that "[w]hite silica sands selected and processed for use as proppants are less prone to failure than brown sand because of the monocrystalline as opposed to polycrystalline structure, and are selected based on their respective physical characteristics and ability to meet production requirements at the well sites." The court further noted that "[r]esin coated proppants and ceramic proppants are also designed and selected for use based on their respective physical characteristics and production requirements at the well sites." The court found that "[p]roppants which form proppant packs have a degree of complexity, possess continuing utility, and are not fully integrated in another object." The circuit court concluded that the "proppants are used directly in manufacturing . . . as a necessary and integral part of the process, and their absence would cause the manufacturing operation to cease."

Tax-exemption cases are reviewed de novo on appeal, and the findings of fact of the trial court are not set aside unless they are clearly erroneous. *Weiss v. Bryce Co., LLC*, 2009

Ark. 412, at 3, 330 S.W.3d 756, 757.[2] In *Ragland*, this court considered whether a contractor's gravel furnished to build temporary roads can be viewed as equipment used directly in the process of extracting oil. *Ragland*, 292 Ark. at 520, 732 S.W.2d at 120. This court concluded that "equipment" was defined as "implements, tools or devices of some degree of complexity and continuing utility." *Id.*, 732 S.W.2d at 120. Applying this definition, the court rejected the contention that the gravel at issue was equipment because the gravel "become[s] fully integrated into a temporary road, the utility of which ends upon the termination of each oil-extraction project." *Id.* We note, however, that this court did not specify the degree of complexity, only that there be "some degree of complexity." Further, the gravel became integrated into the road, not the oil-extraction project itself, and the utility of the road ended at the conclusion of the project.

Subsequently, in *Weiss v. Chem-Fab Corp.*, 336 Ark. 21, 984 S.W.2d 395 (1999), this court held that chemicals used to manufacture aircraft parts constituted "equipment." In *Chem-Fab*, this court referred to the two-part definition established in *Ragland* and looked at (1) whether the chemicals constituted "implements, tools or devices of some degree of complexity" and (2) whether the chemicals had "continuing utility." On the first point, the court concluded that the chemicals were implements because they served as instruments or tools to soften metal or to mill away excess metal. Moreover, the court determined that

---

[2]While this court has previously stated that a taxpayer had to establish an entitlement to an exemption from taxation beyond a reasonable doubt, in April 2009 the General Assembly changed the standard of proof for the taxpayer to clear and convincing evidence. *See Weiss*, 2009 Ark. 412, at 3–4, 330 S.W.3d at 757–58. We further note that in 2015, the burden of proof was changed to a preponderance of the evidence. 2015 Ark. Acts 896, § 3.

chemicals are, by their very nature, complex substances. The court also found that the chemicals possessed "continuing utility" and therefore satisfied the second part of the test; the chemicals were used directly in the process of manufacturing a number of different parts, and the chemicals were not fully integrated into some other object, the utility of which was confined to an individual project. *Id*. at 26–27, 984 S.W.2d at 398. Thus, in *Chem-Fab*, the chemicals were equipment because they were used to manufacture a number of parts without being integrated into the part.

In *Bryce Co., LLC*, the question posed was whether "stickyback tape" used in its printing process constituted equipment. This court considered the two–part-equipment definition set out in *Ragland* as well as the statutory requirement that the equipment be used directly in the manufacturing or processing operation. In concluding that the stickyback tape at issue was subject to the tax exemption, this court stated:

> We conclude that the stickyback tape in the present case meets these case-law-based criteria as well as the regulatory definition of equipment and the simple statutory requirement that the alleged equipment be "used directly in the actual manufacturing or processing operation." § 26–52–402(c)(1)(A). As noted above, the word "equipment" is "an exceedingly elastic term, the meaning of which depends on context." *Ragland,* 292 Ark. at 520, 732 S.W.2d at 120.
>
> Here, the tape possesses some degree of complexity, as described by site manager Swain, in that it is cross-hatched to permit proper airflow and of a specific thickness and softness to provide for even printing. A given segment of tape is used over as much as one million linear feet, and even though it must eventually be discarded, it can be—and sometimes is—retained and reused for smaller printing jobs. Finally, the statute declares that, for an item to be "used directly" in the manufacturing process, it must "cause a recognizable and measurable mechanical, chemical, electrical, or electronic action to take place as a necessary and integral part of manufacturing, the absence of which would cause the manufacturing operation to cease." §26–52–402(c)(2)(A)(i). Without the stickyback tape, the mechanical process of printing the polyethylene packaging could not be accomplished. Accordingly, we conclude that the circuit court did not err in determining that the stickyback tape was equipment that was exempt from sales taxes.

*Bryce Co., LLC*, 2009 Ark. 412, at 11–12, 330 S.W.3d at 761–62.

Thus, in *Bryce Co., LLC*, the tape was deemed complex because of its physical characteristics. Furthermore, the discarding of the tape did not mean that it was not equipment, as the court noted its continuing utility over one million feet and its possible re-use.

With this case law in mind, we turn to the merits. The evidence presented by Weatherford supports the circuit court's findings and refutes ADFA's claims that proppants are not equipment because they are not complex tools or devices, with continuing utility, that are used directly in the process of extracting oil and gas, and do not cause a recognizable and measurable mechanical or chemical action to take place as a necessary and integral part of manufacturing, without which oil-and-gas production would cease. To summarize the evidence from one witness, Weatherford established that proppants are used directly in the process of extracting oil and gas by presenting testimony that proppants are used during each stage of the hydraulic-fracturing process and that proppants are necessary to perform the type of hydraulic fracturing that is performed in the Fayetteville Shale. Relating to complexity, Weatherford also presented testimony that proppants are not just a load of sand that can be picked up anywhere and used; rather, proppants are high-purity silica that is mined, washed, and sized for consistency. In addition, Weatherford presented testimony that the physical characteristics of the proppants are very important and are tested. As for continuing utility, Weatherford presented testimony that the proppants are injected into a well and are used for the life of the well, potentially several years, and that while the proppants remain in the well during and after use, they are not absorbed into the rock formation. With regard to the mechanical action, Weatherford presented testimony that the proppants change the direction of the flow of the gas in the well and increase the speed of the flow. Further, Weatherford

presented additional testimony from another witness that the proppants produce a physical and mechanical action by preventing the fracture from closing and by directing the flow of the gas; possess a certain degree of complexity; have a continuing utility for the life of a well; and do not become part of the well itself. The same witness testified that without proppants, production would cease in the Fayetteville Shale. Given this evidence, we cannot say that the trial court clearly erred in concluding that the proppants in the present case were equipment.

ADFA's second point on appeal is that the circuit court erred in finding that Arkansas Gross Receipts Tax Rule GR–57(E)(5), which characterized proppants as nonexempt, is invalid and unenforceable as applied to this case. However, as explained above, there is sufficient evidence to affirm the trial court's finding that proppants are equipment. An administrative regulation cannot be contrary to a statute. *Pledger v. C.B. Form Co.*, 316 Ark. 22, 30, 871 S.W.2d 333, 337 (1994). Therefore, we affirm the trial court's finding that Rule GR–57(E)(5) is invalid and unenforceable as applied in this case because it is contrary to the applicable statutory provisions. Thus, we need not address the circuit court's remaining reasons for finding the rule invalid and unenforceable.

Affirmed.

HANNAH, C.J., and DANIELSON and WYNNE, JJ., dissent.

**ROBIN F. WYNNE, Justice, dissenting.** I believe the majority errs in failing to acknowledge the presumption in favor of the taxing power of the state, and I would reverse. Therefore, I respectfully dissent.

Prior to Act 300 of 2014, the statute at issue in this case, Arkansas Code Annotated section 26–52–402, did not include sand and other proppants in its list of items that constituted machinery and equipment specifically exempted from the gross-receipts tax. It did provide,

"The Director of the Department of Finance and Administration may promulgate rules and regulations for the orderly and efficient administration of this section." Ark. Code Ann. § 26-52-402(d). The Director promulgated Arkansas Gross Receipts Tax Rule GR–57(E)(5), which characterized proppants as nonexempt. In my view, this was a reasonable interpretation of the statute at issue based on our case law. While hydraulic fracturing is clearly a complex process, and preparing sand to be used in that process may also be considered somewhat complex, the sand itself is not an implement, tool, or device "of some degree of complexity." *Ragland v. Dumas*, 292 Ark. 515, 520, 732 S.W.2d 118, 120 (1987).

This court has held that "[t]here is a presumption in favor of the taxing power of the state, and all tax-exemption provisions must be strictly construed against the exemption." *Weiss v. Bryce Co., LLC*, 2009 Ark. 412, at 3, 330 S.W.3d 756, 757. This court has frequently reiterated the phrase "to doubt is to deny the exemption." *Id.* (citing, *e.g.*, *Citifinancial Retail Servs. v. Weiss*, 372 Ark. 128, 133, 271 S.W.3d 494, 498 (2008); *Pledger v. C.B. Form Co.*, 316 Ark. 22, 25, 871 S.W.2d 333, 334 (1994); *Pledger v. Baldor Int'l*, 309 Ark. 30, 33, 827 S.W.2d 646, 648 (1992)). Here, strictly construing the statute against the exemption, I would hold that the circuit court clearly erred in finding that proppants constitute exempt equipment under the Gross Receipts Act and reverse.

For the reasons outlined above, I respectfully dissent.

HANNAH, C.J., and DANIELSON, J., join.

*Susan E. Nichols*, Revenue Legal Counsel, for appellant.

*Dover Dixon Horne PLLC*, by: *Michael G. Smith* and *Michael O. Parker*, for appellee.