HOWARD W. BRILL, Chief Justice liThe Illinois Bayou begins on the south slopes of the Ozarks in the Boston Mountains. Its four forks merge and provide Class II/III whitewater canoeing. On its downstream route through Pope County, it passes near the communities of Hector, Scottsville, and Dover before joining Lake Dardarielle in the Arkansas River. Although ideal for canoeing and bass fishing, the waters of the Illinois Bayou and the Huckleberry Creek Reservoir are not suitable for drinking by the residents of Rus-sellville. The 'waters must first be cleaned. Thus begins this tax litigation. I. Facts The City of Russellville created the .City Corporation to operate, maintain, and improve the city’s municipal waterworks system. The City Corporation manages a water-treatment plant that provides potable drinking water to the residents of Rus-sellville. At the Lwater-treatment plant, a three-phase process includes the pretreatment, clarification, and final filtration of surface water that is transformed into potable drinking water. In 1998, Carrothers Construction Company of Arkansas, LLC (Carrothers), a limited liability company headquartered in Kansas, constructed an expansion of the water-treatment -plant. Carrothers purchased several items of machinery and equipment for the project. ■ Carrothers installed this machinery and equipment for the extensive three-phase water-treatment process at the Russellville plant. In July 2004, the auditor for the Arkansas Department of Finance and Administration (DFA) conducted an audit of Car-rothers’s records pertaining to its activities and purchases in 1999 and 2000 in performing its contractual obligations to expand the Russellville water-treatment plant. Carrothers claimed $1,266,463.35 as expenditures exempt from state and local sales taxes and compensating-use taxes.’ The auditor determined that Carrothers purchased personal property from out-of-state vendors and that these purchases were subjected to Arkansas’s state and local use taxes, plus interest. As a result of three separate audits, DFA proposed to assess $56,006.78 in state use taxes, $3674.57 in local use taxes, and $27,482.33 in interest against Carrothers. Carroth-ers objected to the. assessments. After determining that some assessments, were barred by. the statute of limitations, on December 8, 2005, DFA issued a final assessment of $94,994,89 and a demand for payment. Carrothers paid a portion of these taxes in the amount of $5191.16 to DFA. On Octobef 25, 2010, Carrothers filed a complaint against Larry Walther in his official capacity as the director of DFA. Carrothers alleged that it was entitled to a refund of ^additional use taxes, to an order requiring the abatement of the unpaid portions of the final assessment, and to! a court- ruling “ordering the abatement of any portion of the disputed assessment by DFA attributable to items of tangible personal property not utilized in Arkansas or double included in the auditor’s determinations.” On July 1, 2014, Carrothers filed a motion for summary judgment asserting that there were no genuine issues of material fact and that, as a matter of law, it qualified for a manufacturing exemption.[1] In its motion, Carrothers asserted that its purchases of tangible personal property, particularly the piping used to carry chemicals within the water-treatment plant and the concrete for the holding tanks, werse exempt from taxation because those items were used in the plant’s expansion. Attached to Carrothers’s motion for summary judgment was an affidavit of Michael Morrand, owner and president of Carroth-ers, who described the extensive three-stage mechanical and chemical water-treatment process utilizing Carrothers’s equipment, The first phase of the water-treatment process begins with the raw surface water’s pretreatment process known as “trash or debris removal.” According to Morrand, the raw surface water is directed by gravity flow or pumped through intake structures where large items, such as logs, branches, leaves, and trash, are screened and removed. Morrand stated that a “number , of chemicals are injected into the ‘raw surface water’ at this point for the 1 ¿purpose of removing contaminants that would affect the taste and odor of the final drinking water (‘potable’) product.” Morrand explained that Carrothers constructed a chemical holding facility, with numerous tanks and piping, to-facilitate this process. ■ . During the second phase, known as the flocculation process, the water from the first phase is subjected to several additional chemical applications “designed to settle out microscopic particles and to clarify the partially treated ‘raw surface water.’” Morrand stated that coagulant chemicals are injected at a “Rapid Mix Facility” and a second “SuperPulsator Clarifier,” installed by Carrothers during the expansion, that removes “color, turbidity, and organic materials from the chemically treated ‘raw surface water.’ ” Lastly, Morrand stated that during the final water-treatment phase, the water is purified by exposing the water to chemicals, typically chlorine, lime, and fluoride, before it passes from' a “Backwash Tank” into the “Final Filter Tanks,” Morrand concluded that “many of [Carrothers’s] purchases of items of tangible personal property (e.g., all of the piping used to carry the influent and the processing chemicals within this drinking water treatment plant, as well as the concrete for the holding tanks, etc.)” were exempt from Arkansas state and local sales-arid-use taxes. In response to Carrothers’s motion for summary judgment, DFA contended that Russellville’s water-treatment facility was not a manufacturer of water, but instead merely cleaned the water for human consumption. On June 22, 2015, the circuit court granted Carrothers’s motion for summary judgment and ruled that Carrothers was entitled to the manufacturing exemption set forth in IsArkansas Code Annotated section 26-52-402(a)(l)(A). As a basis for its ruling, the circuit court found that the “extensive mechanical and chemical treatment process turns a raw material; into a finished product that is an article of commerce that is available for end users for drinking- and other hygienic purposes.” The circuit court ordered the abatement of the unpaid portions of sales and use taxes, penalties and interest assessed by DFA against, Carrothers as set forth in the final assessment, and a refund of the portion of compensating-use taxes in the amount of $5191.16 that Carrothers paid to DFA because of the audit. DFA timely filed its notice of appeal. Pursuant to Arkansas Supreme Court Rule: 1 — 2(b)(6) (2015), we have jurisdiction of this appeal because it involves a substantial question of law concerning the construction of a statute. II. Analysis For its sole point on appeal, DFA argues that the circuit court erred in granting Carrothers’s motion for summary judgment and in'" ruling that Carrothers was entitled to the manufacturing exemption. Specifically, DFA contends that because the water-treatment plant cleans water and does not manufacture it, Car-rothers is not entitled to a manufacturer’s tax exemption. Carrothers responds' that the complex three-phase chemical and mechanical process of converting raw surface water into potable’ drinking water does constitute manufacturing under the statute. This-court reviews tax-exemption cases de novo on appeal. Weiss v. Bryce Co., LLC, 2009 Ark. 412, 330 S.W.3d 756. We have stated that the first rule in interpreting a .statute is to construe it just as it reads by giving words their ordinary and usually accepted meaning. [ f Aluminum Co. of Am. v. Weiss, 329 Ark. 225, 946 S.W.2d 695 (1997). There is a strong presumption in favor of the taxing power of the state, and. all tax-exemption provisions must be strictly construed against the- exemption. Weiss; 2009 Ark. 412, 330 S.W.3d 756. The claimant has the burden of establishing the right to an exemption beyond a reasonable doubt, and- to doubt is to deny the exemption. Id. Under Arkansas’s tax laws, a sales tax is levied on all sales to any person of tangible personal property. Ark.Code Ann. § 26-52-301 (Repl.2014). Section 26-52-402(a)(1)(A) provides an exemption for equipment and machinery used directly in manufacturing: Gross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas. The machinery and equipment will be exempt under subsection (a)(1) if it [sic] is purchased and used.to create new manufacturing or processing plants or facilities within this state or to expand existing manufacturing or processing plants or facilities within this, state. Ark.Code Ann. § 26-52-402(a)(l)(B). Section 26-52-402(b) states that “[a]s used in this section, ‘manufacturing’ or ‘processing’ refers to and includes those operations commonly understood within their ordinary meaning.” Given these statutory provisions authorizing tax exemption, the issue then is whether the water-treatment plant engaged in manufacturing. This court has held that manufacturing and' processing are not two distinct operations and that a taxpayer, in' order to be entitled to the exemption, must first qualify-as a manufacturer. See Heath v. Westark Poultry Processing \7Corp., 259 Ark. 141, 531 S.W.2d 953 (1976) (citing Hervey v. Tyson’s Foods, Inc., 252 Ark. 703, 480 S.W.2d 592 (1972)); see also Scurlock v. Henderson, 223 Ark. 727, 729, 268 S.W.2d 619, 620 (1954) (stating that processing “is a flexible term and might with strictness be applied to any alteration of raw material, such as cutting trees for conversion into lumber, washing potatoes ... [and] removing stems from strawberries”). Further, this court has stated that merely putting raw material into a marketable form is not manufacturing. Ragland v. Ark. Valley Coal Servs., 275 Ark. 108, 109, 627 S.W.2d 559, 560 (1982). Specifically, in Ragland, Arkansas Valley Coal Services bought coal from mining companies, crushed it, blended it, and sold it to steel mills for use as fuel. In determining whether the machinery qualified for an exemption, we emphasized that Arkansas Valley’s process did not change the essential identity of the coal: Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary, ... There must be a transformation; a new and different article must emerge, having a distinctive name, character or use. Id. at 109-10, 627 S.W.2d at 559 (quoting E. Tex. Motor Freight Lines, Inc. v. Frozen Food Express, 351 U.S. 49, 53, 76 S.Ct. 574, 100 L.Ed. 917 (1956)). The Supreme Court’s rationale provided a sound basis for our holding that Arkansas Valley had not clearly established its right to the tax exemption. Ragland, 275 Ark. at 110, 627 S.W.2d at 559. Additionally, in Pellerin Laundry Mach. Sales Co. v. Cheney, 237 Ark. 59, 371 S.W.2d 524 (1963), Pellerin sought a manufacturing exemption for laundry and dry-cleaning machinery, arguing that because the soiled or dirty garments were given a new form, it was entitled to the tax exemption. This court found no merit in Pelle-rin’s argument and affirmed |sthe chancellor’s decision that the equipment was not exempt from taxation. Id. at 65, 371 S.W.2d at 528; see also Gaddy v. Hummelstein Iron & Metal, Inc., 266 Ark. 1, 585 S.W.2d 1 (1979) (holding that a taxpayer who bought scrap metal from old cars and compressed it into cubes or bales did not qualify for the exemption because the taxpayer was not a manufacturer); Scurlock, 223 Ark. 727, 268 S.W.2d 619 (holding that the manufacturing exemption was not available to a company that purchased equipment to gin cotton because the equipment merely removed leaves, hulls, and seeds from the cotton). Carrothers relies on cases such as Arkansas Beverage Company v. Heath, 257 Ark. 991, 521 S.W.2d 835 (1975), in which this court held that Arkansas Beverage Company, which bottled Pepsi Cola, was a manufacturer and was therefore entitled to a manufacturing exemption for cardboard cartons. This court held that Arkansas Beverage Company engaged in the manufacturing of a bottled carbonated beverage from numerous ingredients, such as chemically treated water, sugar, Pepsi Cola concentrate, vanilla, citric acid, and carbon dioxide, during the bottling operation. Unlike the present case, the manufacture of the Pepsi product in Arkansas Beverage implied a transformation of raw materials into a new product. Here, Russellville’s water-treatment plant did not manufacture or process a new product. Through an elaborate three-phase process, the water-treatment plant turned river water into drinking water. That water was taken from the Illinois Bayou, and that water was supplied to the residents of Russellville. It was water in the beginning, and.it was water in the end. Carrothers acquired materials and constructed a facility to treat and clean the water, but it did not manufacture the water. Thus, Carrothers is not .entitled to the manufacturing | ^exemption pursuant to section 26-52-402. We hold that Carroth-ers is not entitled to summary judgment as a matter of law. Accordingly, we reverse the decision of the circuit court and remand for a calculation of actual tax. Reversed and remanded. Baker and Goodson, JJ., dissent. . A manufacturing exemption may be claimed for qualifying purchases of machinery and equipment for sales tax pursuant to Arkansas Code Annotated section 26-52-402 (Supp. 2015), and for compensating-use fax pursuant to Arkansas Code Annotated section 26-53-114 (Repl.2004). For purposes of this opinion, we apply the terms, “manufacturing exemption” or "tax exemption,” interchangeably to both sales and use tax.